## MAHER, COMMISSIONER OF INCOME MAINTE-
## NANCE OF CONNECTICUT *v.* GAGNE·

No. 78–1888.   Argued January 9, 1980—Decided June 25, 1980

STEVENS, J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, MARSHALL, and BLACKMUN, JJ., joined, and in Part II of which BURGER, C. J., and POWELL and REHNQUIST, JJ., joined. POWELL, J., filed an opinion concurring in part and concurring in the judgment, in which BURGER, C. J., and REHNQUIST, J., joined, *post*, p. 133.

*Edmund C. Walsh*, Assistant Attorney General of Connecticut, argued the cause for petitioner. With him on the brief was *Carl R. Ajello*, Attorney General.

*Joan Eisenman Pilver* argued the cause for respondent. With her on the brief were *Michael B. Trister* and *David C. Shaw*.

Mr. Justice Stevens delivered the opinion of the Court.

In an action brought under 42 U. S. C. § 1983, the court, in its discretion, may allow the prevailing party to recover a reasonable attorney's fee as part of the award of costs.[1] The question presented by this petition is whether fees may be assessed against state officials after a case has been settled by the entry of a consent decree, without any determination that the plaintiff's constitutional rights have been violated.

Petitioner is responsible for the administration of Connecticut's Aid to Families with Dependent Children (AFDC), a federally funded public assistance program.[2] Respondent is a working recipient of AFDC benefits. Under state and federal regulations, the amount of her benefits depends, in part, on her net earnings, which are defined as her wages minus certain work-related expenses. In 1975 respondent filed a complaint in the United States District Court for the District of Connecticut alleging that Connecticut's AFDC regulations denied her credit for substantial portions of her actual work-related expenses,[3] thus reducing the level of her benefits. Her

---

[1] The Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, provides:

"In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

This statute is codified in 42 U. S. C. § 1988; in the codification § 1979 of the Revised Statutes has been renumbered to refer to § 1983 of Title 42 of the United States Code.

[2] The action was filed against petitioner's predecessor in office, Nicholas Norton, Commissioner of Welfare of the State of Connecticut. The title of the position has since been changed to "Commissioner of Income Maintenance." We shall simply refer to the Commissioner as "petitioner."

[3] Connecticut's Department of Social Services Manual provided that only certain enumerated expenses could be deducted; the amounts allowed

complaint alleged that these regulations violated § 402 (a)(7) of the Social Security Act, 42 U. S. C. § 602 (a)(7),[4] and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.[5] The complaint further alleged that relief was authorized by 42 U. S. C. § 1983[6] and invoked federal jurisdiction under 28 U. S. C. § 1343.[7]

---

for lunches and automobile transportation were limited to 50 cents per working day and 6 cents per mile respectively. App. 66. The complaint alleged that respondent's actual transportation expenses were 13.9 cents per mile and that her meal expenses amounted to $1.65 per day. *Id.*, at 8.

[4] The statute requires States to take into consideration "any expenses reasonably attributable to the earning of . . . income." In *Shea* v. *Vialpando,* 416 U. S. 251, this Court held that participating States could not place arbitrary limits on the amount of work-related expenses that could be claimed by recipients. Although States may use standardized allowances for the sake of administrative convenience, they must give recipients the opportunity to demonstrate that their actual expenses exceed the standard.

[5] In her complaint respondent alleged:

"28. Defendants' practice and policy constitute an invidious discrimination against persons whose work-related expenses exceed the allowances set forth in Index 332.31 and violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by forbidding plaintiff and the class she represents ever from controverting the presumption that their work-related expenses exceeding the transportation and food allowances of Index 332.31 are reasonable.

. . . . .

"32. Defendants' practice and policy violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution in that:

"a) Defendants' practice and policy establish an irrebutable [*sic*] presumption that the plaintiff's work-related transportation and lunch allowances are unreasonable and operate to deny plaintiff and the class she represents a fair opportunity to rebut it.

"b) The standard lunch and transportation allowances contained in Index 332.31 are arbitrary in that they were not developed by a statistically fair averaging, nor do they reflect current prices." App. 9–10.

[6] "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be sub-

A few months after the action was commenced, while discovery was underway, petitioner amended the AFDC regulations to authorize a deduction for all reasonable work-related expenses. After an interval of almost a year and a half, respondent filed an amended complaint alleging that actual expenses in excess of certain standard allowances were still being routinely disallowed. Thereafter, a settlement was negotiated and the District Court entered a consent decree that, among other things, provided for a substantial increase in the standard allowances and gave AFDC recipients the right to prove that their actual work-related expenses were in excess of the standard.[8] The parties informally agreed that the question whether respondent was entitled to recover attorney's fees would be submitted to the District Court after the entry of the consent decree.

Following an adversary hearing, the District Court awarded respondent's counsel a fee of $3,012.19. 455 F. Supp. 1344

---

jected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[7] Title 28 U. S. C. §§ 1343 (3) and (4) provide as follows:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

.        .        .        .        .

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

[8] As is customary, the consent decree did not purport to adjudicate respondent's statutory or constitutional claims. Rather, it explicitly stated that "[n]othing in this Consent Decree is intended to constitute an admission of fault by either party to this action." App. 76.

(1978). The court held that respondent was the "prevailing party" within the meaning of § 1988 because, while not prevailing "in every particular," she had won "substantially all of the relief originally sought in her complaint" in the consent decree. *Id.*, at 1347. The court also rejected petitioner's argument that an award of fees against him was barred by the Eleventh Amendment in the absence of a judicial determination that respondent's constitutional rights had been violated. Relying on the basic policy against deciding constitutional claims unnecessarily, the court held that respondent was entitled to fees under the Act because, in addition to her statutory claim, she had alleged constitutional claims that were sufficiently substantial to support federal jurisdiction under the reasoning of *Hagans* v. *Lavine*, 415 U. S. 528.

The Court of Appeals affirmed, 594 F. 2d 336 (CA2 1979), holding that Congress intended to authorize an award of fees in this kind of situation and that it had the constitutional power to do so.[9] We granted certiorari to consider both the statutory and constitutional questions. 444 U. S. 824.

---

[9] The court rejected petitioner's constitutional claim on two grounds. First, it held that the Eleventh Amendment does not apply to an award of attorney's fees because such fees are ancillary to the imposition of prospective relief within the reasoning of *Edelman* v. *Jordan*, 415 U. S. 651. Second, the court held that, even if the Eleventh Amendment did apply, Congress had the power to authorize the assessment of fees in a case such as this under the Fourteenth Amendment:

"The State contends, however, that Congress' power under the Fourteenth Amendment to override state sovereign immunity extends only to suits in which a party prevails on a *constitutional* claim. On this view, Congress cannot validly authorize a fee award against a state in the absence of a judicial determination that plaintiff had a meritorious constitutional claim. We disagree. We think it is within Congress' Fourteenth Amendment power to authorize a fee award when a party prevails on a statutory claim as long as the pendent constitutional claim is a substantial one and arises out of the same operative facts. Such a fee award furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues. As we understand the

## I

Petitioner's first argument is that Congress did not intend to authorize the award of attorney's fees in every type of § 1983 action, but rather limited the courts' authority to award fees to cases in which § 1983 is invoked as a remedy for a constitutional violation or a violation of a federal statute providing for the protection of civil rights or equal rights. In support of this contention, petitioner relies on our holding in *Chapman* v. *Houston Welfare Rights Organization*, 441 U. S. 600, that there is no federal jurisdiction under § 1343 over § 1983 claims outside these categories and that there is therefore no jurisdiction under § 1343 over a § 1983 claim based solely on a violation of the Social Security Act. Characterizing respondent's claim in this case as arising solely out of a Social Security Act violation, petitioner argues that the District Court had no authority under § 1988 to award her attorney's fees.

Even if petitioner's characterization of respondent's claim were correct,[10] his argument would have to be rejected. In *Maine* v. *Thiboutot, ante,* p. 1, decided this day, we hold that § 1988 applies to all types of § 1983 actions, including actions based solely on Social Security Act violations. As MR. JUSTICE BRENNAN's opinion for the Court in *Thiboutot*

---

Supreme Court decisions, any appropriate means of implementing the Fourteenth Amendment overrides the State's Eleventh Amendment rights, see, *e. g., Fitzpatrick* v. *Bitzer, supra,* 427 U. S., at 453, 456; *Katzenbach* v. *Morgan,* 384 U. S. 641, 648–650 (1966). We hold that the authorization of attorneys' fees to be awarded under the standards set forth above is an appropriate way to achieve the competing goals described above." (Emphasis in original.) 594 F. 2d, at 342–343.

[10] Petitioner ignores the fact that respondent did allege constitutional claims which the District Court and the Court of Appeals both found to be sufficiently substantial to support federal jurisdiction under *Hagans* v. *Lavine,* 415 U. S. 528. Under these circumstances petitioner could not have prevailed on his statutory argument even if the Court had reached the opposite result in *Thiboutot*. See n. 15, *infra.*

demonstrates, neither the language of § 1988 nor its legislative history provides any basis for importing the distinctions *Chapman* made among § 1983 actions for purposes of federal jurisdiction into the award of attorney's fees by a court that possesses jurisdiction over the claim.[11]

We also find no merit in petitioner's suggestion that respondent was not the "prevailing party" within the meaning of § 1988. The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate Report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S. Rep. No. 94–1011, p. 5 (1976).

Nor can we accept petitioner's contention that respondent

---

[11] The jurisdictional statute at issue in *Chapman*, 28 U. S. C. § 1343, specifically limits district court jurisdiction to cases in which the plaintiff alleges a violation of a right secured by the Constitution or by a federal statute "providing for equal rights" or "civil rights." Inasmuch as it does not create substantive rights at all, but merely provides a remedy for the violation of rights conferred by the Constitution or other statutes, § 1983 does not fall within the category of statutes providing for equal rights or civil rights. Therefore, there is not automatically federal jurisdiction under § 1343 whenever a plaintiff files a § 1983 claim; rather, the court must look to the underlying substantive right that was allegedly violated to determine whether that right was conferred by the Constitution or by a civil rights statute.

Section 1988 does not contain language like that in § 1343. Rather, § 1988 provides that attorney's fees may be awarded to the prevailing party "[i]n any action or proceeding to enforce [§ 1983]." Although the reference to actions "to enforce" § 1983 is somewhat imprecise in light of the fact that § 1983 does not itself create substantive rights, the legislative history makes it perfectly clear that the Act was intended to apply in any action for which § 1983 provides a remedy. See *Maine* v. *Thiboutot, ante*, at 9–10.

did not gain sufficient relief through the consent decree to be considered the prevailing party. The District Court's contrary finding was based on its familiarity with the progress of the litigation through the pleading, discovery, and settlement negotiation stages. That finding was upheld by the Court of Appeals, and we see no reason to question its validity. See *Graver Mfg. Co.* v. *Linde Co.*, 336 U. S. 271, 275.

## II

Petitioner's second argument is that, regardless of Congress' intent, a federal court is barred by the Eleventh Amendment from awarding fees against a State in a case involving a purely statutory, non-civil-rights claim.[12] Petitioner argues that Congress may empower federal courts to award fees against the States only insofar as it is exercising its power under § 5 of the Fourteenth Amendment to enforce substantive rights conferred by that Amendment. Thus, petitioner contends that fees can only be assessed in § 1983 actions brought to vindicate Fourteenth Amendment rights or to enforce civil rights statutes that were themselves enacted pursuant to § 5 of the Fourteenth Amendment.[13]

In this case, there is no need to reach the question whether a federal court could award attorney's fees against a State based on a statutory, non-civil-rights claim. For, contrary to petitioner's characterization, respondent did allege violations of her Fourteenth Amendment due process and equal protec-

---

[12] The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Eleventh Amendment issue was not before the Court in *Thiboutot* because that case involved an award of fees by a state court pursuant to § 1988. *Ante*, at 9, n. 7.

[13] "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

tion rights, which the District Court and the Court of Appeals both held to be sufficiently substantial to support federal jurisdiction under *Hagans* v. *Lavine*, 415 U. S. 528. Although petitioner is correct that the trial judge did not find any constitutional violation, the constitutional issues remained in the case until the entire dispute was settled by the entry of a consent decree. Under these circumstances, petitioner's Eleventh Amendment claim is foreclosed by our decision in *Hutto* v. *Finney*, 437 U. S. 678.

In *Hutto*, we rejected the argument of the Attorney General of Arkansas that the general language of § 1988 was insufficient to overcome a State's claim of immunity under the Eleventh Amendment, noting that "[t]he Court has never viewed the Eleventh Amendment as barring such awards, even in suits between States and individual litigants." [14] *Id.*, at

---

[14] Referring to the argument of the Attorney General, we said:

"[H]e argues that these plain indications of legislative intent are not enough. In his view, Congress must enact express statutory language making the States liable if it wishes to abrogate their immunity. The Attorney General points out that this Court has sometimes refused to impose retroactive liability on the States in the absence of an extraordinarily explicit statutory mandate. See *Employees* v. *Missouri Public Health & Welfare Dept.*, 411 U. S. 279; see also *Edelman* v. *Jordan*, 415 U. S. 651. But these cases concern retroactive liability for prelitigation conduct rather than expenses incurred in litigation seeking only prospective relief.

"The Act imposes attorney's fees 'as part of the costs.' Costs have traditionally been awarded without regard for the States' Eleventh Amendment immunity. The practice of awarding costs against the States goes back to 1849 in this Court. See *Missouri* v. *Iowa*, 7 How. 660, 681; *North Dakota* v. *Minnesota*, 263 U. S. 583 (collecting cases). The Court has never viewed the Eleventh Amendment as barring such awards, even in suits between States and individual litigants.

"In *Fairmont Creamery Co.* v. *Minnesota*, 275 U. S. 70, the State challenged this Court's award of costs, but we squarely rejected the State's claim of immunity. Far from requiring an explicit abrogation of state immunity, we relied on a statutory mandate that was entirely silent on the question of state liability. The power to make the award was supported by 'the inherent authority of the Court in the orderly administra-

695. Moreover, even if the Eleventh Amendment would otherwise present a barrier to an award of fees against a State, Congress was clearly acting within its power under § 5 of the Fourteenth Amendment in removing that barrier. Under § 5 Congress may pass any legislation that is appropriate to enforce the guarantees of the Fourteenth Amendment. A statute awarding attorney's fees to a person who prevails on a Fourteenth Amendment claim falls within the category of "appropriate" legislation. And clearly Congress was not limited to awarding fees only when a constitutional or civil rights claim is actually decided. We agree with the courts below that Congress was acting within its enforcement power in allowing the award of fees in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim or in one in which both a statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication.[15] As

---

tion of justice as between all parties litigant.' *Id.*, at 74. A federal court's interest in orderly, expeditious proceedings 'justifies [it] in treating the state just as any other litigant and in imposing costs upon it' when an award is called for. *Id.*, at 77.

"Just as a federal court may treat a State like any other litigant when it assesses costs, so also may Congress amend its definition of taxable costs and have the amended class of costs apply to the States, as it does to all other litigants, without expressly stating that it intends to abrogate the States' Eleventh Amendment immunity. For it would be absurd to require an express reference to state litigants whenever a filing fee, or a new item, such as an expert witness' fees, is added to the category of taxable costs." 437 U. S., at 695–697 (footnotes omitted).

[15] The legislative history makes it clear that Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which the plaintiff prevailed is one for which fees cannot be awarded under the Act. The Report of the Committee on the Judiciary of the House of Representatives accompanying H. R. 15460, a bill substantially identical to the Senate bill that was finally enacted, stated:

"To the extent a plaintiff joins a claim under one of the statutes enumerated in H. R. 15460 with a claim that does not allow attorney fees, that

the Court of Appeals pointed out, such a fee award "furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues." 594 F. 2d, at 342. It is thus an appropriate means of enforcing substantive rights under the Fourteenth Amendment.[16]

The judgment is affirmed.

*So ordered.*

MR. JUSTICE POWELL, with whom THE CHIEF JUSTICE and MR. JUSTICE REHNQUIST join, concurring in the judgment, and in Part II of the Court's opinion.

Respondent's complaint presented claims under both the Social Security Act and the Fourteenth Amendment. Follow-

---

plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales* v. *Haines,* 486 F. 2d 880 (7th Cir. 1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans* v. *Lavine,* 415 U. S. 528 (1974). In such cases, if the claim for which fees may be awarded meets the 'substantiality' test, see *Hagans* v. *Lavine, supra; United Mine Workers* v. *Gibbs,* 383 U. S. 715 (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a 'common nucleus of operative fact.' *United Mine Workers* v. *Gibbs, supra,* at 725." H. R. Rep. No. 94–1558, p. 4, n. 7 (1976).

[16] Petitioner seeks to distinguish this case from *Hutto* v. *Finney* on the ground that *Hutto* involved an adjudication of a constitutional violation, rather than a statutory violation. However, as MR. JUSTICE REHNQUIST noted in his dissent, 437 U. S., at 717–718, the underlying claim in *Hutto* was predicated on the Eighth Amendment as made applicable to the States by the Fourteenth Amendment rather than on any substantive provision of the Fourteenth Amendment itself. The prisoners' claim in *Hutto* was therefore arguably more analogous to the statutory claim involved in this case than to the constitutional claims asserted here or to the equal protection claim asserted in *Fitzpatrick* v. *Bitzer,* 427 U. S. 445.

ing a settlement between the parties, the District Court ruled that respondent is a "prevailing party" under 42 U. S. C. § 1988, and that she alleged "substantial" constitutional claims as defined in *Hagans* v. *Lavine,* 415 U. S. 528 (1974).

In this situation, the District Court and the Court of Appeals for the Second Circuit both found, the award of attorney's fees under § 1988 does not require an adjudication on the merits of the constitutional claims.  I agree with this conclusion.  Consequently, I see no reason to reach out, as the Court does in Part I of its opinion, to apply today's ruling in *Maine* v. *Thiboutot, ante,* p. 1.  See *ante,* at 128–129.  That decision holds that plaintiffs may win attorney's fees under § 1988 when they bring an action under 42 U. S. C. § 1983 without any constitutional claim whatever.  For the reasons given in my dissenting opinion in *Thiboutot,* I believe that decision seriously misconceives the congressional purpose behind § 1983.  In this case, however, the complaint included a substantial constitutional claim which "remained in the case until the entire dispute was settled by the entry of a consent decree."  *Ante,* at 131.  Since Congress has made plain its intent that fees be awarded to "prevailing" parties in these circumstances, see *ante,* at 132–133, n. 15, we have no occasion to look behind the settlement agreement to evaluate further the constitutional cause of action.

In contrast, Part II of the Court's opinion resolves the Eleventh Amendment question on the narrow ground that respondent alleged "substantial" Fourteenth Amendment claims.  *Ante,* at 131.  *Hutto* v. *Finney,* 437 U. S. 678 (1978), held that since Congress may qualify the States' Eleventh Amendment immunity under the Enforcement Clause of the Fourteenth Amendment, § 1988 authorizes fee awards against States in these circumstances.  I believe that Congress should not be deemed to have qualified the Eleventh Amendment in the absence of explicit evidence of that intent.  See *Hutto, supra,* at 704 (POWELL, J., concurring in part and dissent-

ing in part). Nevertheless, I accept *Hutto* as binding precedent for this case and note only that the Court has reserved the question "whether a federal court could award attorney's fees against a State based on a statutory, non-civil-rights claim." *Ante,* at 130.