Rosa GREENE, Plaintiff,

v.

**GIBRALTAR MORTGAGE INVEST-
MENT CORP., et al., Defendants.**

Civ. A. No. 80–183.

United States District Court,
D. Columbia.

Dec. 4, 1981.

Lawrence N. Minch, Russell B. Kinner, Washington, D. C., for plaintiff.

Leonard C. Collins, John D. Miller, Washington, D. C., Daren Stephens, Alexandria, Va., for defendants.

Alan Kriegel, Washington, D. C., amicus curiae.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This case is before the Court on plaintiff's motion for reconsideration of this Court's January 28, 1981 order denying her attorneys' fees.

### I.

This Court relied heavily on *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), in denying the requested fee award. *Alyeska,* however, held only that Congress alone can authorize an exception to the prevailing American rule that attorneys' fees ordinarily are not recoverable by the winning party in federal court litigation. Here, Congress has authorized fee awards under each of the two statutes, the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and the D. C. Consumer Protection Procedures Act. D. C. Code, Title 28, Appendix (Supp. V. 1978), upon which plaintiff relied in her claims for substantive relief. Where this is so, the Supreme Court has held that plaintiffs who substantially prevail on their non-fee claims are entitled to recover attorneys' fees even if their fee-generating claims have not been reached by the Court. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (hereinafter *Maher*). This Court's reliance upon *Alyeska* in denying attorneys' fees, accordingly, was misplaced.

The Supreme Court in *Maher* rejected the argument that attorneys' fees should be denied where a fee-generating claim is joined with a non-fee-generating claim, and recovery is had on the latter without reaching the merits of the former. In *Maher,* a settlement had been reached in a case which joined a non-fee claim under 42 U.S.C. § 1983, which permits attorneys' fee awards, *inter alia,* in civil rights cases involving constitutional violations. The parties agreed as part of their settlement to submit the attorneys' fee claim to the District Court to which the consent decree was being submitted for approval. The District Court awarded a fee, and the defendant appealed, arguing that since the District Court had declined to rule on the constitutional claim which was the predicate for the fee award, plaintiff was not entitled to recover any fee.

This argument was rejected by the Court of Appeals, *Gagne v. Maher,* 594 F.2d 336 (2d Cir. 1979), *aff'd* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). It was held

that the legislative history of the civil rights fee award statute clearly contemplated the making of awards to plaintiffs who prevail on a non-fee claim joined to a fee-generating claim, where the fee-generating claim, while not reached, is substantial (e.g., affords a basis for federal question jurisdiction) and arises out of a "common nucleus of operative fact." *Id.* at 340. As the Court of Appeals stated:

> It does not matter which claim induced the concessions or which claim would have been successful at trial, as long as the [fee-generating] claim is substantial and arises from the same operative facts as the non-fee claim. [*Id.*]

In the instant case, plaintiff has unquestionably prevailed on her common law claims. The Court found that the contract and transaction in issue were void and unenforceable on grounds of fraud, misrepresentation and unconscionability. The fee-generating claims under the D. C. Consumer Protection Procedural Act and the Truth in Lending Act arose from the same operative facts as the non-fee claim. They also concerned the same issues, i.e., the lack of notice and failure to disclose significant terms, and the concomitant extent of fraud and misrepresentation in the loan transaction. Further, the fee-generating claims, while not reached, were substantial.

This Court would defeat the legislative intent of fee provisions of the statutes here involved, which is to encourage vindication of important rights on the part of plaintiffs who ordinarily could not afford to ventilate their claims, were it to deny recovery merely because the fee-generating claim was not reached. Accordingly, the Court awards attorneys' fees to plaintiff.

## II.

Plaintiff's attorneys seek the following award:

| Lawrence Minch | | |
|---|---|---|
| Merits of claims 135–¾ hours at $75 | | $10,181.25 |
| Fee motion 25–¼ hours at $75 | | 1,893.75 |
| | Subtotal | $12,075.00 |
| Russell Kinner | | |
| Merits of claims 26–¾ hours at $75 | | 2,006.25 |
| Fee motion 4–¼ hours at $75 | | 318.75 |
| | Subtotal | $ 2,325.00 |
| John Buchanan | | |
| Merits of claims 46–½ hours at $60 | | 2,790.00 |
| Fee motion ¼ hours at $60 | | 15.00 |
| | Subtotal | $ 2,805.00 |
| | Total Hourly Award | 17,205.00 |
| | Incentive award of 100% (Lodestar Adjustment) | 17,205.00 |
| | Total Attorneys' Fees | 34,410.00 |
| | Secretarial overtime expense | 305.10 |
| | Total Award | $34,715.10 |

The Court awards reasonable attorneys' fees and costs based on the framework set forth in *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (hereinafter *Copeland*). While this case is not a Title VII suit like *Copeland, Copeland's* analysis applies here as it sets forth a general framework for awarding attorneys' fees. The Court initially determines a lodestar award, which is the reasonable number of hours spent on the case times a reasonable rate for the various persons who worked on the case. The Court then adjusts the lodestar up or down after examining and weighing the twelve criteria established in *Johnson v. Georgia Highway, Inc.*, 488 F.2d 714 (5th Cir. 1974), the most important criteria being the contingent nature of the fee and the quality of representation.* *Copeland* at 892–93.

---

* The *Johnson* criteria are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee in the community for similar work; (6) the fixed or contingent nature of the fee; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

A. Assessment of Reasonable Hours:

Plaintiff has provided detailed records of the time logged and daily services rendered by her attorneys. A summary of the breakdown of these hours is as follows:

| | | Attorney Hours | | |
| | | | Messrs. | |
| | Task | Minch | Kinner | Buchanan |
|---|---|---|---|---|
| I. | Preliminary: client interviews, initial research, letters to defendants, complaint | 35 | 2 | 0 |
| II. | Discovery | 0 | 0 | 0 |
| III. | Research and writing TRO papers, preparation for TRO hearing | 50 | 0 | 19–¾ |
| IV. | TRO hearing | 1–½ | 1–½ | 0 |
| V. | Research and writing points and authorities for preliminary injunction/trial, preparation for hearing | 27–¼ | ½ | 26–¾ |
| VI. | Writing Motion for Summary Judgment | 0 | 6–½ | 0 |
| VII. | Other research and investigation for preliminary injunction hearing/trial | 0 | 9–½ | 0 |
| VIII. | Preliminary injunction hearing/trial | 5 | 5 | 0 |
| IX. | Motion to Amend the Judgment | 14–½ | 1–½ | 0 |
| X. | Appeal | 2–½ | ¼ | 0 |
| | Total on Merits of Claims | 135–¾ | 26–¾ | 46–½ |
| | Fee Motion | 25–¼ | 4–¼ | ¼ |
| | TOTAL HOURS | 161 | 31 | 46–¾ |

Lawrence Minch was the lead counsel in this case and he ably represented plaintiff. Having graduated from law school in the spring of 1977, he had been practicing approximately two-and-one-half years at the time this suit commenced. His experience had been primarily in the areas of corporate litigation and administrative practice so that he was unfamiliar with the legal issues in this case. Mr. Minch received help from Mr. Kinner which saved him much time. Mr. Kinner is an experienced attorney in the consumer protection law area. The Court, however, has reviewed in detail the hours which Mr. Minch requested and finds that they are somewhat excessive in areas I, III and V. Accordingly, the Court finds a reasonable number of hours to be 140, rather than the requested 161.

John Buchanan assisted Mr. Minch in this suit. He graduated from law school in the spring of 1978 and then clerked for one year. Therefore he had started with Covington and Burling less than one year before this suit commenced. He, too, was unfamiliar with the fraud, unconscionability and consumer law questions presented in this suit. The Court after careful review of his request of hours reduces them by 10%, to 42 hours. Russell Kinner is an expert in the area of consumer law and assisted Mr. Minch and Mr. Buchanan considerably. The Court finds that the 31 hours he requested are reasonable.

■ The Court denies the request for an award to cover the costs of the secretarial overtime incurred.

B. Assessment of Reasonable Fee:

■ The reasonable hourly rate of compensation is "that prevailing in the community for similar work." *Copeland, supra* at 892. The plaintiff is seeking an hourly rate of $75 for Messrs. Minch and Kinner, and $60 for Mr. Buchanan. Defendants do not dispute the reasonableness of these rates. Further, the Court finds them reasonable.

Accordingly, the lodestar award is $15,-345.00.

### C. Lodestar Adjustments

█ Adjustments to the lodestar are based primarily on the contingent nature of the fee and the quality of representation. *Copeland, supra* at 892–93. A quality adjustment to the lodestar is proper "only when the representation is unusually good or bad, *taking into account the level of skill normally expected* of an attorney commanding the hourly rate used to compute the "lodestar." *Copeland, supra* at 893 (emphasis in original). The quality of representation in this case was good, but not unusually so. Therefore no adjustment for quality is required in this case.

██ Evaluating the contingent nature of success, the Court must assess the probability or likelihood of success viewed at the time of filing. *Copeland, supra* at 893; *Lindy Bros. Builders v. America Radiator and Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1978). In the instant case, some of the legal issues were complex and novel and the time to brief them was short. In addition, the payment of any fee depended on the success of the litigation. While these facts weigh in favor of a large contingency award, other considerations indicate a lesser award. A lodestar award of $15,-000 well compensates the attorneys for their efforts, including the extra time and skill it took to brief the more difficult issues. *See Veterans Education Project v. Secretary of the Air Force*, 515 F.Supp. 993 at 996 (D.D.C.1981). Furthermore, the Court paid Mr. Minch at the hourly rate of $75 despite the fact that he had only been practicing for two and one-half years. *Snead v. Harris*, CA 77–2191 (D.D.C. January 30, 1981) ($80 per hour awarded to able, experienced attorney). The Court decided that $75 per hour was proper in this case in part because of the risk involved in the litigation. To the extent "that an hourly rate underlying the 'lodestar' fee itself comprehends an allowance for the contingent nature of the availability of fees ... no further adjustment duplicating that allowance will be made." *Copeland, supra* at 893. Accordingly, upon consideration of the contingent nature of the case and the other *Johnson* factors, the Court increases the lodestar by 10%. The final fee award therefore is $16,880.