ILLINOIS WELFARE RIGHTS ORGANIZATION, et al., Plaintiffs-Appellees,

v.

Jeffrey C. MILLER, Director, Illinois Department of Public Aid and The Illinois Department of Public Aid, Defendants-Appellants.

No. 83–1260.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 1983.

Decided Dec. 13, 1983.

Owen M. Field, Chicago, Ill., for defendants-appellants.

Robert E. Lehrer, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs-appellees.

Before WOOD and POSNER, Circuit Judges, and GORDON, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

This case is on appeal from a decision of the district court awarding attorney's fees to plaintiffs[1] under 42 U.S.C. § 1988 (1976 & Supp. V 1981) for all time spent in connection with their lawsuit challenging the operation of the Illinois Aid to Families with Dependent Children (AFDC) public assistance program. Defendants[2] contend that the district court erred in basing the amount of the award on the total time plaintiffs spent litigating the case in light of plaintiffs' purported failure to prevail on significant issues in the litigation. Although we express no opinion as to the appropriateness of the size of the award in this case, we believe the case should be remanded to the district court for the reasons we explain.

## I.

The rather complex issues underlying plaintiffs' lawsuit were litigated over a period of more than eight years, beginning with the filing of the initial complaint in 1973 and culminating in a settlement agreement approved by the trial court on February 8, 1982. In their lawsuit, plaintiffs maintained that the manner in which the Illinois Department of Public Aid (IDPA) changed the method for calculating the "standard of need" it used in determining eligibility and payment levels for AFDC benefits violated section 402(a)(23) of the Social Security Act of 1935, 42 U.S.C. § 602(a)(23), and the equal protection clause of the fourteenth amendment. Plaintiffs argued that the IDPA consolidation methodology adopted in 1973, which altered the method for computing the "standard of need" from an individualized system to a consolidated, flat-grant procedure, improperly obscured the standard for AFDC recipients that existed under the old individualized grant system. Plaintiffs objected to the new consolidation methodology on two principal grounds. They argued that the new Consolidated Standard Plan (CSP) failed (1) to account fully for each of

---

[*] The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

[1] Appellees here were plaintiffs in the trial court; they will be referred to as plaintiffs in this opinion.

[2] Appellants here were defendants in the trial court; they will be referred to as defendants in this opinion.

the need items (*e.g.,* food, clothing, rent) included in or that should have been included in the earlier individualized standard of need and (2) to assign fair prices to those items. Plaintiffs sought declaratory and injunctive relief invalidating the consolidated standard and requiring the IDPA to reformulate the standard to correct the alleged errors. After approximately two years of litigation, the district court granted summary judgment to plaintiffs as to certain portions of these objections, denied others, and clarified the issues of fact that remained to be tried. *Illinois Welfare Rights Organization v. Trainor,* 438 F.Supp. 269 (N.D.Ill.1977). Thereafter, the parties undertook protracted discovery, and plaintiffs filed an amended complaint and obtained class certification. Just before trial, however, the parties entered into a stipulation and agreement that provided that the IDPA would develop a new definition of "standard of need" that would not be based on the pre-October 1, 1973, data used to construct the CSP, but instead on data developed by the federal government and updated to reflect then-current costs. The stipulation also stated that the parties agreed that plaintiffs were entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988 (1976 & Supp. V 1981). Because the parties were unable to negotiate an appropriate amount of attorney's fees, the matter was submitted to the district court for a determination.

On January 23, 1983, Judge Flaum issued a memorandum opinion in which he awarded fees and costs to plaintiffs in the amount of $261,797.88. *Illinois Welfare Rights Organization v. Miller,* No. 73 C 2437 (N.D.Ill. Jan. 27, 1983). The amount was designed to compensate plaintiffs for all time expended in the litigation, since Judge Flaum concluded that the plaintiffs were "prevailing parties" and that "they succeeded, through settlement, in their overall objective of obtaining a new method of computing the standard of need." *Id.,* slip op. at 5.

## II.

Section 1988 of Title 42, 42 U.S.C. § 1988 (1976 & Supp. V 1981), allows courts to award reasonable attorney's fees to "prevailing parties" in federal civil rights actions. A plaintiff will be considered a "prevailing party" and entitled to reasonable attorney's fees if the plaintiff has succeeded " 'on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit.' " *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978) ); *Lenard v. Argento,* 699 F.2d 874, 899 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983). To be considered a "prevailing party," a plaintiff need not have succeeded at a trial on the merits, so long as through settlement or otherwise the plaintiff has vindicated his or her rights. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Harrington v. DeVito,* 656 F.2d 264 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). The test for whether a plaintiff is a prevailing party in a settled case is two-fold. First, "the plaintiff['s] lawsuit must be causally linked to the achievement of the relief obtained," and second, "the defendant must not have acted wholly gratuitously, *i.e.,* the plaintiff['s] claim[ ], if pressed, cannot have been frivolous, unreasonable, or groundless." *Harrington v. DeVito,* 656 F.2d at 266–67. Once a plaintiff is found to be a prevailing party, the court then must consider several factors in determining what will constitute a reasonable attorney's fees award.

The considerations for determining the amount of a reasonable attorney's fees award only recently were described by the United States Supreme Court in *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a decision that was handed down after Judge Flaum's opinion in the instant case. In our view, the decision in *Hensley* affects previous approaches to attorney's fees awards adopted in this circuit in two significant respects. First, it implicitly rejects our opinion in *Johnson ex rel. Johnson v. Brelje,* 701 F.2d 1201 (7th Cir.1983) that "[a]ttorney's fees should be awarded only for preparation and presenta-

tion of those claims on which the plaintiff prevailed." *Id.* at 1211. *Hensley* specifically approves awarding attorney's fees for time expended on unsuccessful claims for relief that are related to successful claims. Second, *Hensley* emphasizes that courts must give considerable attention to the relationship between the extent of the plaintiff's success and the amount of the fee award.

The two-part analysis described in *Hensley* requires that, once a court has found a plaintiff to be a "prevailing party," it then must consider whether the plaintiff has asserted any unsuccessful claims that are "distinctly different" from the successful claims. Such "distinctly different" claims, which are based on "different facts and legal theories" than the successful claims, should be excluded in determining reasonable attorney's fees. 103 S.Ct. at 1940. *See, e.g., Mary Beth G. v. City of Chicago,* 723 F.2d 1263 at —— - ——, (7th Cir.1983). If, however, the plaintiff has asserted unsuccessful claims related to the successful claims by a "common core of facts" or that are based on "related legal theories," 103 S.Ct. at 1940, time spent on these related but unsuccessful claims should not automatically be excluded in arriving at a reasonable attorney's fees award. Instead, the court is to undertake a second analysis and focus on the overall results obtained to determine whether it should compensate the plaintiff for the hours spent on the related but unsuccessful claims. Generally, if the results obtained are excellent, the "[plaintiff's] attorney should recover a fully compensatory fee," which will "[n]ormally . . . encompass all hours reasonably expended on the litigation. . . ." *Id.* If the plaintiff has achieved only partial success, however, compensating the plaintiff for all hours expended on the litigation may be excessive. In such a situation, the court may adjust the award either by identifying specific hours that should be eliminated or by simply reducing the overall award to reflect the plaintiff's limited success. *Id.* 103 S.Ct. at 1941.

### III.

Defendants concede that plaintiffs have met the threshold requirements to be considered "prevailing parties" but maintain that the case must be remanded because the district court never addressed the questions whether the plaintiffs failed to prevail on certain claims that were unrelated to or severable from their successful claims and whether they achieved a level of success that makes all of the hours reasonably expended a satisfactory basis for making the fee award. The problem with applying the analyses in *Hensley* to the present case, however, is that *Hensley* involved fully litigated claims and not a settlement agreement. Although some settlement agreements may be structured so that they dispose of the original claims in a way that allows the court to decide whether a particular claim has been ultimately successful or unsuccessful, this will not always be the case. Indeed, many settlements will be informally structured with an eye toward the achievement of overall objectives, rather than the disposition of discrete claims. With these more general settlements, the analysis in *Hensley* regarding successful and unsuccessful claims may be unworkable, although the central teaching of *Hensley* will still apply. That teaching is that in every case the court must explicitly consider whether the fee is a reasonable one in light of the level of the plaintiff's success.

The case before us is unusual in that some of the issues were decided on summary judgment and one was severed for separate consideration before the parties entered into the settlement agreement. It is even more unusual in that the settlement agreement arguably resolved some issues differently than the way these issues had been disposed of on summary judgment. For example, although plaintiffs lost on summary judgment on their claim that the IDPA erred in not incorporating the amount actually paid by the recipients for shelter and certain other items into its consolidation, *Illinois Welfare Rights Organiza-*

*tion v. Trainor,* 438 F.Supp. 269, 275–77, 283 (N.D.Ill.1977), the new standard of need adopted as part of the settlement agreement arguably secured for plaintiffs the relief they sought on the claim; the new standard is based on the expenses a poor family in Illinois actually incurs for shelter, as well as for other needs. *See* IDPA's Rules 3.516, 3.517, published at 6 Ill.Reg. 881 (Jan. 22, 1982). We believe, therefore, that the instant case is one that is particularly unsuited to the *Hensley* analysis regarding unsuccessful and successful claims and that it should not be straightjacketed into such an approach.

■ We agree with defendants, however, that because Judge Flaum did not have an opportunity to consider explicitly the second and central analysis required by *Hensley,* *i.e.,* whether the amount of the award is reasonable in light of the extent of plaintiffs' overall success, the case should be remanded to the district court to reconsider the amount of the award.[3] *See, e.g., Inmates of Allegheny County Jail v. Pierce,* 716 F.2d 177 (3d Cir.1983). Our remand should not be construed as an indication that we necessarily believe the amount of the award in this case was excessive. We remand only because Judge Flaum did not

consider the award according to the specific standard that *Hensley* now requires.[4]

■ *Hensley* instructs that the critical assessment to be made by the court under the second part of its analysis is "the extent of a plaintiff's success" in terms of "the results obtained." 103 S.Ct. at 1943. We believe this analysis can be broken down into three stages. First, the district court should assess the results obtained by the litigation. Relief that is not a product of the litigation but that is the result of entirely independent events cannot properly be considered as part of the results obtained by the plaintiff's efforts. *See id.* 103 S.Ct. at 1942–43 n. 15. In the instant case, the summary judgment relief benefiting plaintiffs was clearly a product of the litigation. Defendants concede this but apparently argue that the relief described in the settlement agreement was *not* obtained as a result of the litigation.

Ordinarily, of course, once a plaintiff in a settlement situation is found to be a "prevailing party," the court will already have concluded that the results of the settlement were a product of the litigation since, as we have already observed, to become a "prevailing party" when a settlement is involved, the plaintiff will have had to show that his or her lawsuit was "causally linked

---

3. Plaintiffs argue that Judge Flaum's opinion is faithful to *Hensley,* even though Judge Flaum did not have the benefit of *Hensley* when he awarded the attorney's fees here. Plaintiffs maintain that Judge Flaum's conclusion that plaintiffs "essentially succeeded in what they sought" is a factual determination that makes the award compensating plaintiffs for all time spent on the litigation a reasonable one under the second part of the *Hensley* analysis. We believe, however, that a careful reading of Judge Flaum's opinion indicates that his statement was directed primarily toward the determination whether plaintiffs were "prevailing parties," a factual determination made in light of a different legal standard than the one used in the second part of the *Hensley* analysis. This reading is confirmed by the cases Judge Flaum cites in connection with the statement, since all of the cases cited pertain to whether a party was a "prevailing party" under the statute. Although Judge Flaum may have had plaintiffs' overall success in mind when he made the statement about plaintiffs' efforts having "essentially succeeded" rather than the

more limited success necessary to be considered a prevailing party, the context of the statement is sufficiently ambiguous to leave us unconvinced that this is the proper interpretation. Therefore, although we are inclined to believe after a thorough review of the record that plaintiffs' overall success was indeed considerable, fairness to the parties and the dictates of *Hensley* require that the critical analysis assessing the relationship between the amount of the fee award and the plaintiff's success be made explicitly by the district court on remand.

4. We are aware, of course, that Judge Flaum is no longer in a position to hear the case on remand, since he is now a member of this court. We believe, however, that the assessment of the relationship between the amount of the fees awarded and the level of plaintiffs' success involves factual questions that should be made in the first instance by the district court, which can request additional argument by the parties.

to the achievement of the result obtained." *Harrington v. DeVito,* 656 F.2d 264, 266 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). Here, however, defendants assert that although they concede that plaintiffs are prevailing parties for purpose of some attorney's fees, they concede this only on the basis of plaintiffs' limited success in the summary judgment proceeding. They assert that the new standard of need described in the settlement was agreed to not as a direct result of plaintiffs' litigation but because of legislation passed by the Illinois legislature.

The requirement "that the lawsuit in some way have played a provocative role in obtaining relief" is a factual determination. *Id.* at 267. It is clear from Judge Flaum's memorandum opinion that he implicitly concluded that plaintiffs' lawsuit was instrumental in bringing about the new standard of need described in the settlement agreement. *Illinois Welfare Rights Organization v. Miller,* No. 73 C 2437, slip op. at 4–5 & n. 8 (N.D.Ill. Jan. 27, 1983). Defendants have offered no evidence showing that the new standard of need was arrived at because of factors wholly independent of plaintiffs' lawsuit. They merely suggest, without explaining why, that state legislation, Ill.Rev.Stat. ch. 23, § 12–4.11, effective May 1, 1981 (P.A. 81–1523), was responsible for the changed standard. We note, however, that the legislation to which defendants refer did nothing more than permit the IDPA to move to a percentage reduction system in which it could make benefit payments to recipients at a level less than actual need, as measured by the standard. The legislation did not indicate what form the standard of need itself should take. By contrast, it was toward that end that plaintiffs' lawsuit was directed. Moreover, although the legislation relied on by defendants was enacted on December 3, 1980, defendants continued for more than a year to litigate the case fully before a settlement was reached. Because we believe that Judge Flaum's finding that plaintiffs' lawsuit was a catalyst in bringing about the new standard of need is not clearly erroneous, the district court on remand should consider the new standard as part of the results obtained by plaintiffs' litigation.

*Hensley* emphasizes that "the inquiry does not end with a finding that the plaintiff obtained significant relief." 103 S.Ct. at 1943. Thus, once having assessed the results obtained by plaintiffs' lawsuit, the district court should next measure the extent of plaintiffs' success by comparing the results obtained from the lawsuit with the relief plaintiffs sought. Defendants argue that what plaintiffs sought in this case was increased monetary benefits. This is essentially a question of fact, but we believe it should be answered primarily with reference to the relief sought in the complaint. Attempting to discern plaintiffs' ultimate motives by turning to sources other than the relief requested in the complaint engages courts in mere speculation. Therefore, the district court on remand should examine whether the new definition of "standard of need" that appears in the settlement agreement fulfills plaintiffs' objective as stated in the complaint; as stated there, plaintiffs' objective was "to revise the consolidated grant structure and system so that it is in conformity with federal and state law." (R. 3 at 15) (original complaint); (R. 131 at 15) (amended complaint); *see also* statements by Judge Flaum in Notice of Settlement of Class Action (R. 155, A–1); Order Approving Settlement (R. 167 at 3–4). If this objective has been fulfilled, and we have already suggested that it might very well have been, *supra* note 3, then plaintiffs will have essentially succeeded in what they sought.

The final step for the district court is to structure an award that is reasonable in light of the plaintiffs' success. A reduced fee award is appropriate only "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley v. Eckerhart,* 103 S.Ct. at 1943.

### IV.

The judgment of the district court awarding attorney's fees is vacated and the cause

remanded for further proceedings consistent with this opinion. The parties shall bear their own costs for this appeal.