Frances **THOMAS**

v.

**BOARD OF TRUSTEES OF REGIONAL COMMUNITY COLLEGES, et al.**

**Civ. No. N–83–214 (PCD).**

United States District Court, D. Connecticut.

Dec. 19, 1984.

---

Frederick W. Krug, Matzkin, Krug & Danen, Waterbury, Conn., for plaintiff.

Thomas P. Clifford, III, Asst. Atty. Gen., Hartford, Conn., for defendants State of Conn., et al.

Denise Derby, Moynahan & Ruskin, Waterbury, Conn., for defendant Patricia Yarborough.

## RULING ON PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES

DORSEY, District Judge.

Plaintiff has moved for attorney's fees and costs in this civil rights action on the ground that she is a "prevailing party" entitled thereto under 42 U.S.C. § 1988. For the reasons below, the court finds that plaintiff is a "prevailing party," notwithstanding the voluntary dismissal of the action after a stipulated settlement. In light of the limited relief secured by the settlement, however, the court finds further that the award sought should be reduced to reflect the partial success and that no "bonus" above the lodestar is warranted. Finally, plaintiff's request of an award of costs is hereby transmitted to the clerk for processing in the ordinary course, and not under 42 U.S.C. § 1988. An award of attorney's fees in the amount of $4,837.40 is allowed.

*Facts*

Plaintiff brought this action in April 1983 alleging employment discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 1981 and 42 U.S.C. § 1983, at the hands of defendants, members of the State of Connecticut Board of Trustees of Regional Community Colleges, and certain past and present officials of Mattatuck Community College, all sued in their official and individual capacities. Plaintiff, who is a black, was employed full-time from January 2, 1977, to November 6, 1981, as coordinator/instructor in the Homemaker Training Program at Mattatuck Community College. From November 6, 1981, to the date this action was commenced, plaintiff was employed as a part-time lecturer in the program.

She alleges violation of rights secured to her by the above-noted statutes as well as Mattatuck's Affirmative Action Plan by failing to promote her to the supervisory position of Statewide Coordinator, Homemaker Home Health and Training Program at Mattatuck in 1980 when the job was created, and again in 1981 when the job became vacant. In each instance, defendants are alleged to have promoted two less-qualified white females. (Complaint ¶¶ 19–23). Plaintiff further alleges unlawful discrimination in defendants' delay in acting on a complaint regarding her non-promotion filed with the Board of Trustees in 1982, as to which the Board's Assistant Executive Director expressed his conclusion that plaintiff's complaint was meritorious. (Complaint ¶¶ 27–29).

Plaintiff essentially requested (1) a declaratory judgment that her failure of promotion in 1980 and 1981 and termination from a full-time position in 1981 were a result of discrimination by defendants; (2) an injunction restraining further appointments to the Statewide Coordinator post absent compliance with the Affirmative Action Plan; (3) reinstatement to a full-time position as, or comparable in pay and responsibility to, Statewide Coordinator, with back pay and benefits; and (4) costs, attorney's fees and such other relief, including damages, as may be just and proper. (Complaint, Prayer for Relief, ¶¶ 1–8).

None of these claims has been adjudicated by the court, which has resolved only defendants' motion to dismiss and motion for protective order. The motion to dis-

miss variously attacked the legal sufficiency of her complaint and was resolved against defendants in virtually all regards. *See* the court's Ruling on Objection to Magistrate's Denial of Defendants' Motion to Dismiss. The motion for protective order was granted in part and denied in part. Neither of these rulings adjudicated the parties' substantive rights and obligations.

This matter was resolved by a carefully drafted Stipulation of Settlement. Under the settlement, plaintiff was appointed to fill a vacancy as Statewide Coordinator for the period ending June 30, 1985, retaining certain benefits accrued prior to November 6, 1981, with reappointment subject to continued federal funding and to defendants' compliance with the Mattatuck Affirmative Action Plan. Plaintiff waived all other claims for relief. Plaintiff agreed to withdraw this action and release defendants from any and all further claims. The stipulation provided that it

> shall not be construed in any way as an admission of wrongdoing or violation of any of the plaintiff's rights under federal or state law ... [and] shall pertain only to the facts and issues set forth in the instant complaint and shall not, in any manner, be cited as legal precedent or be involved with precedential value.

Stipulation, ¶¶ 13, 15. The stipulation reserved to plaintiff the right to seek an award of attorney's fees. She now so moves.

*Discussion*

### I.

█ A "prevailing party" in civil rights litigation is entitled to reasonable attorney's fees under 42 U.S.C. § 1988. A plaintiff will be considered a "prevailing party" entitled to such fees if the plaintiff has succeeded " 'on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978). That a plaintiff prevails through settlement does not preclude her being found entitled to

fees, *Gagne v. Maher*, 594 F.2d 336, 340 (2d Cir.1979), *aff'd*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980), so long as through settlement the plaintiff has vindicated one or more of her claims. *Illinois Welfare Rights Organization v. Miller*, 723 F.2d 564, 566 (7th Cir.1983).

Where litigation has concluded pursuant to a settlement agreement painstakingly drawn to preclude any intimation of concession on the merits upon which an award of fees could easily be predicated, determination as to whether or not a party has "prevailed" has been subjected to a two-fold test:

> First, 'the plaintiff['s] lawsuit must be causally linked to the achievement of the relief obtained,' and second, 'the defendant must not have acted gratuitously, *i.e.* the plaintiff['s] claim[ ], if pressed, cannot have been frivolous, unreasonable, or groundless.' *Harrington v. DeVito*, 656 F.2d 264, 266–67 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982).

*Illinois Welfare Rights Organization*, 723 F.2d at 566. *See also Nadeau*, 581 F.2d at 280–81 (similar, noting that the key issue on the causation question is the "provocative" or catalytic role of plaintiff's lawsuit in prompting defendants to take action to meet plaintiff's claims); *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir.1975).

█ Once a plaintiff is found to be a "prevailing party," it must be determined whether the plaintiff has asserted any unsuccessful claims "distinctly different" from, i.e. based on "different facts and legal theories," than the successful claims. *Hensley*, 103 S.Ct. at 1940. Time spent solely in pursuit of unsuccessful claims should be excluded from the fee award. If plaintiff's successful and unsuccessful claims are a "common core of facts" or are based on "related legal theories," and if the results obtained are "excellent," all hours reasonably expended on the litigation are normally compensable, *id.* at 1941; whereas, if plaintiff has achieved only partial success, the court may reduce the overall

award or eliminate specific hours to reflect plaintiff's limited overall success. *Id.*

## II.

■ Plaintiff is found to be a "prevailing party." Notwithstanding the apparent co-incidence of a vacancy in the position of Statewide Coordinator during the pendency of this litigation, a vacancy causally unrelated to this action, the possibility that plaintiff "could well ... have applied for the position and been appointed in any event" (Memorandum in Opposition, p. 6), is speculative.[1] Instead, it is found that the lawsuit played a sufficiently significant or "provocative" role in the settlement to enable plaintiff to cross *Hensley's* "generous formulation," 103 S.Ct. at 1939, of the statutory threshold for a prevailing party. Plaintiffs have cleared this "low threshold" in a variety of instances. *See, e.g., Gingras v. Lloyd*, 585 F.Supp. 684, 686 (D.Conn.1983) (wherein the court was persuaded, even though the suit changed nothing, that the "slow-turning wheels of the bureaucracy no doubt moved more quickly and efficiently when subject to the scrutiny of the court-appointed doctors"); *Connecticut Coordinating Committee v. Speziale*, Civ. No. H–80–573 (D.Conn. Feb. 24, 1983) (awarding fees after settlement since the institution of the action significantly accelerated the deliberate and agonizingly slow pace of bureaucratic action with respect to relocation of the Housing Court); *LaCasa de Puerto Rico v. City of Hartford*, Civ. No. H–77–459 (D.Conn. Apr. 21, 1983) (fees awarded after stipulation where lawsuit acted as a "catalyst" prompting the city to take additional steps in implementing its affirmative action program).

It is found that plaintiff's lawsuit is causally linked to the relief plaintiff obtained in the settlement and further that defendants offering her the appointment was not gratuitous. Plaintiff's claim if pressed cannot be said to have been frivolous, unreasonable or groundless, *Harrington*, 656 F.2d at 266–67; *Illinois Welfare Rights Organi-*

zation, 723 F.2d at 566, as would preclude an award of fees notwithstanding the "provocative" role of her lawsuit. By virtue of her appointment to the post of Statewide Coordinator, plaintiff has derived some of the benefit she sought in this action. *Hensley*, 103 S.Ct. at 1939. She is a "prevailing party" for purposes of § 1988.

## III.

■ "It remains for the ... court to determine what fee is 'reasonable,'" *Hensley* at 1939, the number of hours reasonably expended multiplied by a reasonable hourly rate being "[t]he most useful starting point." *Id.* In light of the detailed time and expense breakdown presented in plaintiff's affidavit, counsel's statement that the same was based on contemporaneously-kept time records, and the absence of objection by defendants to the claimed hours or the documentation thereof, the affidavit is sufficient. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir.1983) (contemporaneous time records a prerequisite to the award of fees). In light of the effort there reflected and absent any suggestion to the contrary, the time claimed (86½ hours) is found to have been reasonably expended. As the time claimed for presenting the fee claim (7⅔ hours) appears reasonable and defendants do not suggest to the contrary, the time expended on the fee application shall be included in the basis for calculating an award. *See, e.g., Gagne v. Maher*, 549 F.2d at 343–44; *Torres v. Sachs*, 538 F.2d 10 (2d Cir.1976).

■ An hourly rate of $95 as claimed herein is a reasonable in light of the rate normally charged for similar work by attorneys of like skill in the area. While it is within the court's discretion to differentiate between categories of work involved and to award lower fees for clerical or certain out-of-court services, *see, e.g., Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 505, n. 14 (2d Cir.1980), it has been observed that such a differentia-

---

1. Defendants' assertion in this regard flies in the face of their defense of plaintiff's prior non-appointment based on questions as to her qualifications.

tion may tend to unduly deprecate counsel's expenditure of time on preparation and research, both of which contribute significantly to the efficient and effective functioning of the judicial process. *Anunziato v. New Haven Board of Alderman,* Civ. No. N–82–321 (D.Conn. June 27, 1983). The unitary rate of $95 per hour for the work reflected in the record is reasonable.

Defendants further argue that plaintiff's hourly fee award should be limited to $47.50, the hourly rate counsel charged plaintiff. Plaintiff's agreement with counsel provided for unspecified "further compensation depending upon result and the eventual award of attorney's fees, if she should prevail." (Plaintiff's Affidavit in Support, ¶ 4). Thus, the fee was not limited to one-half counsel's usual rate of $95 per hour. Even were the *dictum* in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir.1974), "in no event should the litigant be awarded a fee greater than he is contractually bound to pay," not diluted by the *Hensley* decision, the contingent nature of plaintiff's arrangement with her counsel would likely place it outside *Johnson.*

The "lodestar" figure, representing the product of all number of hours expended and the hourly rate normally charged for such work by attorneys of like skill in the area, *Cohen,* 638 F.2d at 505; *City of Detroit v. Grinell Corp.,* 495 F.2d 448, 470–71 (2d Cir.1974), is thus $8,946.15.

## IV.

■ A reduction in the amount generated by the product of $95 per hour times the full figure for hours claimed is in order, however, in light of *Hensley's* teaching. Where plaintiff has been successful on certain claims but unsuccessful on other related claims, and the results or "the significance of the overall relief obtained" are partial or limited, *id.* at 1940, "the court must explicitly consider whether the fee is a reasonable one in light of the level of plaintiff's success." *Illinois Welfare Rights Organization,* 723 F.2d at 567.

While plaintiff has been appointed to the position principally at issue, she has also waived her claims to substantial aspects of the relief sought. Indeed, while she and her counsel may conceive of some impetus toward or affecting defendants' future conduct, no such transcendent value appears of record to be well founded either by necessity or clear implication. Plaintiff has derived neither the declaratory nor the injunctive relief she sought, either in her behalf or that of other potentially similarly-situated Mattatuck employees. Accordingly, a one-half reduction of the fees claimed is deemed a reasonable reflection of limited or partial success.

■ In the absence of any strikingly significant success and any unusual risk or complexity, *see, e.g., Bridgeport Guardians, Inc. v. Delmonte,* 553 F.Supp. 601 (D.Conn.1983), no multiplier or "bonus" is appropriate. Finally, defendants' argument on policy grounds that fees should not be awarded to a settling plaintiff on the ground that the fear of a significant fee award may force defendants to continue litigating an issue to escape onerous attorney's fees "cuts both ways." *Nadeau,* 581 F.2d at 282. The flip of the coin is that the award of fees to a plaintiff who has prevailed by settlement may actually encourage defendants to settle in order to avoid or reduce their exposure to a claim for fees. Defendants' view would encourage plaintiffs to try cases in which reasonable settlement offers have been received, merely to insure a fee award. *Gagne,* 594 F.2d at 340. Such alleged public policy concerns, which are counter to the law of this circuit, do not warrant a denial of fees to this plaintiff.

## V.

■ To the extent plaintiff's motion seeks an award of costs, it and the supporting and opposing papers are transmitted herewith for determination by the clerk in the ordinary course. It remains the view of this court that § 1988 does not allow recovery of costs beyond those taxable by other lawful authority, and that costs

should be recovered by a prevailing civil rights plaintiff in the ordinary course rather than as an adjunct to a fee application. *See Rivera v. Duff,* Civ. No. B–81–417 (D.Conn. July 31, 1984).

Attorney's fees are awarded in the amount of $4,837.40, derived as the product of the $95 lodestar rate and one-half the time reasonably expended on the litigation, plus the time reasonably expended in the fee application, to wit: $(86.5 \div 2 + 7.67) \times \$95 = \$4,837.40$.

SO ORDERED.