Carolyn GINGRAS, et al., Plaintiffs,

v.

Douglas LLOYD, et al., Defendants.

Civ. No. B 81–67(WWE).

United States District Court,
D. Connecticut.

Sept. 26, 1983.

On Calculation of Attorney's Fees
Feb. 14, 1984.

Robert F. Echols, Valley Legal Asst., Derby, Conn., Judith I. Solomon, Legal Aid Society of Hartford County, Inc., Hartford, Conn., Michael O. Sheehan, New Haven Legal Asst. Asso., Inc., New Haven, Conn., for plaintiff.

Robert Nagy, Richard J. Lynch, Paul J. Lahey, Thomas P. Ring, Asst. Attys. Gen., Hartford, Conn., for defendants.

## RULING ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

EGINTON, District Judge.

This action was commenced in February, 1981, shortly after defendant Lloyd, Connecticut's Commissioner of Health Services, announced that the Laurel Heights Hospital ("Laurel Heights") in Shelton, Connecticut would cease operations on March 12, 1981. At the time, Laurel Heights administered to the special rehabilitative needs of persons afflicted with tuberculosis and other chronic disabilities.

Plaintiffs, patients at Laurel Heights, alleged that the closing of the hospital would violate their due process rights and would

constitute discrimination on the basis of physical handicap and race. They sought various forms of relief, principally, an injunction against the closing of Laurel Heights until defendants made provisions for placement of the plaintiffs in facilities offering a level of care comparable to that enjoyed at Laurel Heights.

The court was persuaded to appoint three medical doctors to review the state's plans for relocating the plaintiffs. On the basis of these doctors' opinion that the state's disposition plans were sound, the court denied the plaintiffs' motion for a preliminary injunction. The other relief sought by plaintiffs—declaratory judgment, class action status, and a temporary restraining order—were likewise denied.

Plaintiffs now seek some $30,000 in attorney's fees. Defendants argue that plaintiffs are not entitled to any award of fees because they were not "prevailing parties" within the meaning of 42 U.S.C. § 1988 ("§ 1988"). Alternatively, defendants argue the amount requested by plaintiffs is excessive and should be reduced if an award is made.

## I. ALLOWANCE OF FEES

■ A prevailing party under § 1988 has been defined as one whose success " 'on any significant issue in litigation ... achieves some of the benefit ... sought in bringing the suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, ——, 103 S.Ct. 1933, 1938, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)). The court is satisfied that plaintiffs have crossed this low statutory threshold.

It is true that plaintiffs' motions for class certification, declaratory judgment, and injunctive relief were all denied. This is not to say that plaintiffs were not prevailing parties.

In fact, the arguments of the plaintiffs prompted the court to appoint three doctors to review the state's plans for relocating plaintiffs to facilities comparable to Laurel Heights. The results of these doctors' review, which were reported to the court before the scheduled closing date of Laurel

Heights, satisfied the court and the plaintiffs of the adequacy of the state's disposition plans.

Thus, the court allowed Laurel Heights to close on schedule, not because plaintiffs utterly failed in their proof, but because the thorough and tireless efforts of the court-appointed doctors allowed the court to reach an informed decision before the scheduled closing date.

The court recognizes defendants' contention that the court-appointed doctors merely confirmed the soundness of the existing plans of the state for relocating the plaintiffs. The court also recognizes, however, that the slow-turning wheels of the bureaucracy no doubt moved more quickly and efficiently when subject to the scrutiny of the court-appointed doctors. *See Connecticut Coordinating Committee of the Handicapped v. Honorable John Cotter & Honorable John Speziale*, Civ. No. H 80–573(TEC), slip op. at 6 (D.Conn. Feb. 24, 1983) (noting defendants' awareness of problem giving rise to suit, and their initiation of corrective action prior to suit, but finding plaintiffs prevailing parties because lawsuit "significantly accelerated the process of correcting the problem").

Thus, the court finds that plaintiffs qualify as prevailing parties within the scope of § 1988, and are entitled to an award of attorney's fees. Accordingly, to the extent that it seeks some award of fees, plaintiffs' motion is GRANTED.

## II. CALCULATION OF FEES

Having determined that an award of attorney's fees is appropriate, the court would normally proceed to calculate an award of "reasonable" fees. It declines, however, to make such a calculation at this time. Instead, it directs the parties to rebrief the issue of calculation in light of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir.1983), decisions handed down after completion of briefing on the instant

motion which revise the guidelines for calculating awards of attorney's fees in cases such as this.

Accordingly, plaintiffs shall file their memorandum by October 14, 1983. Defendants' memorandum shall be filed by October 24, 1983.

It is SO ORDERED.

## ON CALCULATION OF ATTORNEY'S FEES

This is the second of two rulings on plaintiffs' motion for attorney's fees. In the first ruling, filed September 26, 1983, the court found that plaintiffs were "prevailing parties" within the meaning of 42 U.S.C. § 1988 ("§ 1988"), and therefore entitled to an award of reasonable attorney's fees.

The court declined to calculate the award because the parties had not had the opportunity to brief the motion in light of the Supreme Court's opinion in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and the Second Circuit's opinion in *New York State Association for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir.1983).

The court has now reviewed the parties' supplemental briefs and is prepared to calculate an award to the plaintiffs of reasonable attorney's fees. For the purpose of this ruling, the court has synthesized the *Eckerhart* and *Carey* decisions to arrive at the following three-step method of calculation.

■ Reasonable attorney's fees are the product of the 1) number of billable hours reasonably spent on the case by the prevailing party's attorney and 2) the reasonable hourly rate for such services.[1] This "reasonableness" standard subjects hours billed

and rates charged to adjustments, usually downward, according to the factors discussed below.

The product of reasonable hours and reasonable hourly rate is 3) subject to an adjustment, usually upward in the form of a bonus, for achieving excellent results or for rendering services in a particularly complex matter.

In this case, plaintiffs seek $20,567.57 in attorney's fees and costs. They calculate reasonable hours at 248.25 (the combination of hours logged by plaintiffs' two attorneys), a reasonable hourly rate at $75, costs at $79.04, and a bonus of 10%.[2]

## I. REASONABLE HOURS

■ Hours are not reasonably spent if they are excessive, i.e., too much time is devoted to a particular matter, or duplicative, i.e., same matters are covered at different times or by more than one attorney. A project may be overstaffed, thus producing duplicative entries, or an excessive amount of time may be spent on background research.

In this case, defendants contend that duplicative entries pervade plaintiffs' fee application. To account for this duplication, they estimate that 69.5 hours should be deducted from the total number of hours plaintiffs' attorneys claim to have spent on this litigation.

Plaintiffs' attorneys have submitted supplemental affidavits in which they contend that they actually spent the time indicated in their time and expense records. The veracity of plaintiffs' attorneys is not questioned. They further contend that entries of time spent which facially appear duplicative (an example would be the entries for February 5, 6, and 9 of 1981 relating to the preparation of the complaint) do not dis-

---

**1.** This is the so-called "lodestar" method of computing attorney's fees, see *Carey, supra,* 711 F.2d at 1140 and cases cited therein, with one minor difference: In this ruling, adjustments to the multiplicands—hours and rate—are made *before* they are multiplied.

**2.** Plaintiffs have reduced the amount of their request from the $30,349.04 they sought in their

motion as originally briefed. They have recalculated in the following manner: reduce reasonable hours by 4 hours; reduce reasonable rate from $100 to $75 per hour; reduce bonus from 20% to 10%. Costs remain the same; however, they are now included in the basis for the percentage bonus.

close the fact that each attorney was performing discrete functions during these times.

Finally, plaintiffs' attorneys claim that the complex issues and extreme time pressures involved in this case required their joint attendance at meetings, negotiations, hearings and conferences.

The court has performed its own comparison of the time and expense records submitted by plaintiffs' attorneys Solomon and Echols. On their face, these records indicate that these two attorneys spent a total of 126 hours on similar tasks.[3]

Of these 126 jointly-logged hours, a total of 54 were spent at, or in preparation for, hearings, meetings, and interviews. The court finds that all of these hours were reasonably spent, *see Seigal v. Merrick*, 619 F.2d 160, 164 (2d Cir.1980) (appearance of more than one attorney at conferences and court proceedings does not automatically preclude an award of fees for time spent by each of those attorneys), *cited with approval in Carey, supra*, 711 F.2d at 1146, with the exception of 1.5 hours spent by attorney Solomon at case conferences in the latter part of 1981, when the attorneys had assumed a caretaking role in this litigation. Accordingly, the court will deduct 1.5 hours from plaintiffs' fee request.

Of the remaining 72 jointly-logged hours, 38 were devoted to researching, drafting, and reviewing the complaint and supporting papers. Again, the court finds that this time was reasonably spent, despite defendants' claims of redundancy.

If there is ever a time during the course of litigation when "two heads are better than one," it is at the time when the complaint and supporting papers are drafted. Strategy is planned, legal theories selected, and factual assertions made with a view to providing one's client with the surest chance of vindicating his rights. The court would be prepared to find that 38 hours is a reasonable time for one attorney to spend on the preparation of a complaint in a case of this sort. It sees no reason to reduce that figure simply because it is divided between two attorneys.

The remaining 34 jointly-logged hours were spent between February 10 and 17, 1981, when plaintiffs' counsel prepared the preliminary injunction brief filed on February 18, 1981. A total of 65 hours was spent on this brief. It was well written and was a contributing factor to the ultimate relief plaintiffs secured.

Nevertheless, the court deems 65 hours to be an excessive expenditure of time. Accordingly, the court will reduce by 17 hours, representing the time logged by attorney Solomon on the brief, the amount of time reasonably spent on the preparation of the preliminary injunction brief.

The court does not detect instances of proscribed excess, duplication or overstaffing other than those noted above, and will make no further reductions on these grounds.[4]

There is one last consideration in arriving at an estimation of reasonable hours. As the Supreme Court indicated in *Eckerhart*, an hour spent in the pursuit of an ultimately unsuccessful claim may be an hour that has not been reasonably spent.

■ To determine whether hours spent on unsuccessful claims should be deducted from the fee award computation, two questions must be answered:

First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that

---

**3.** The court has arrived at this figure by comparing the time and expense entries of attorneys Solomon and Echols for the following dates, all in 1981: Jan. 30; Feb. 4, 5, 6, 9, 11, 13, 17, 19, 24, 26, 27; Oct. 22; Dec. 8.

**4.** The court rejects defendants' proposal to exclude all of the 26.25 hours spent by plaintiffs' counsel after the appointment of the survey team of doctors on Feb. 27, 1981. The court finds necessarily and reasonably spent the time logged up to and including Mar. 12, 1981, the scheduled closing date of the hospital. The court also finds that the 6.5 hours that attorney Echols spent after Mar. 12, 1981 monitoring the case was time reasonably spent.

makes the hours reasonably expended a satisfactory basis for making a fee award?

*Eckerhart, supra,* 103 S.Ct. at 1940.

In this case the plaintiffs made several claims for relief, all based on the same set of operative facts. In their complaint or by motion, plaintiffs sought: class action status for current and future patients at Laurel Heights Hospital ("Laurel Heights"); injunctive relief in the form of a temporary restraining order, and preliminary and permanent injunctions; declaratory relief.

Plaintiffs' motion for class certification was denied. The court never reached the issues of the injunctive and declaratory relief sought by plaintiffs because it was satisfied prior to the scheduled closing of Laurel Heights that defendants had put together suitable disposition plans for the plaintiffs.

The court deems the claim for class certification as one unrelated to the other forms of relief sought by the plaintiffs. If it had been appropriate, class certification would have done little more than lend manageability to the procedural conduct of this litigation. Accordingly, the court will deduct 19 hours, representing the time logged by attorney Echols on the class action brief, from the amount of hours reasonably spent in this litigation.

The court finds that plaintiffs' claims for declaratory and injunctive relief are sufficiently related. Thus, the court must determine, in accordance with the second question posed by the Court in *Eckerhart* and quoted above, whether the plaintiffs achieved a level of success in this lawsuit that makes the hours spent on these related but formally unreached claims a satisfactory basis for making an award.

The court disagrees with defendants' characterization of plaintiffs' degree of success as "extremely limited." All of plaintiffs' claims were aimed at ensuring that if Laurel Heights closed as scheduled on March 12, 1981, its patients would be transferred to institutions offering comparable rehabilitative facilities. Plaintiffs fully achieved this aim. This is a case where "the court's rejection of or *failure to reach* certain grounds is not a sufficient reason for reducing a fee." *Eckerhart,* 103 S.Ct. at 1940 (emphasis added); *id.* at 1941 n. 11.

In sum, the court will deduct 37.5 hours from the 248.25 hours plaintiffs itemized in their fee request. Thus, the court finds that 210.75 hours were reasonably spent by plaintiffs' attorneys on this litigation.

## II. REASONABLE HOURLY RATE

The traditional rule in this circuit has been that a reasonable hourly rate is that normally charged for similar work done by attorneys of like skill in the community. *Cohen v. West Haven Board of Police Commissioners,* 638 F.2d 496, 506 (2d Cir.1980).

As a result of *Carey,* this rule still applies, but it must be modified when, as here, the attorneys for the prevailing party are employed by non-profit, legal assistance offices. Without such a modification, "an award to non-profit lawyers based upon billing rates charged by profit-making lawyers inevitably produces a windfall." *Carey, supra,* 711 F.2d at 1150.

To avoid such a windfall, the *Carey* court advised district judges to select a "break point" rate. The "break point" is the point above which a private billing rate, with its profit and overhead components, would overcompensate a nonprofit lawyer if used to calculate his fees.

In *Carey,* the court selected a "break point" rate of $75 per hour for legal assistance rendered in New York City in 1980. There is no magic to this figure of $75, and the Second Circuit stated that district judges were not precluded from selecting a "break point" rate somewhat above or below $75. *Id.* at 1152.

Plaintiffs argue that, by virtue of proximity in time, the court should choose *Carey*'s $75 "break point" rate. Defendants propose a $50 "break point" rate because the $75 rate chosen in *Carey* was based on prevailing rates in New York City where

rates "are likely higher than any other community in the Second Circuit."

Current[5] private rates for § 1988 matters in this district appear to have reached and crossed the $100 threshold. *Members of Bridgeport Housing Authority Police v. City of Bridgeport*, Civ. No. B 77–130(TFGD), slip. op. at 2 (D.Conn. Dec. 20, 1983) (ruling on application for attorney's fees; $125 per hour); *Bitsouni v. Sheraton Hartford Corp.*, Civ. No. H 77–337(JAC), slip op. at 15 (D.Conn. Nov. 28, 1983) (same; $100 per hour in one of the years in multi-year case); *Gavagan v. Danbury Civil Service Commission*, Civ. No. B 82–307(TFGD), slip op. at 2 (D.Conn. July 21, 1983) (same; $100 per hour).

The court finds on the basis of these trends in this district that a $75 "break point" rate is reasonable, and will accordingly use that rate in its calculations.

### III. BONUS

Plaintiffs' request for a 10% bonus is apparently modeled on the 10% bonus awarded in *Carey*. That case, however, was exceptional in its length, and legal and logistical complexity. Thus, despite the high quality of representation that plaintiffs' counsel provided under extreme time constraints in this case, the court declines to award a bonus to the plaintiffs' attorneys. The skill of counsel and the complexity of the case are factors that have already been accounted for in the court's calculation, respectively, of a reasonable rate and reasonable hours. *See Population Services International v. Carey*, 476 F.Supp. 4, 12 (S.D.N.Y.1979).

### CONCLUSION

Plaintiffs' counsel are entitled to an award of fees for 210.75 hours at the "break point" rate of $75 per hour, or a total of $15,806.25. Costs shall also be awarded in the amount of $79.04.

Judgment shall enter accordingly.

IT IS SO ORDERED.

5. As the actual litigation of this case occurred in less than one year, the court uses current rather than historic fee rates. *Carey, supra,* 711 F.2d at 1152–53.