**MOBILE SIGN INC., Porta-Ad Ltd., Janice DeSouza d/b/a J & M Sign Service, Michael Donovan, Mario Pappalardo, and New York State Sign Association, Plaintiffs,**

v.

**TOWN OF BROOKHAVEN, Defendant.**

No. 87 C 0757.

United States District Court,
E.D. New York.

Aug. 27, 1987.
As Amended Oct. 8, 1987.

Rothschild, Esposito, Himmelfarb, Sher & Pearl, White Plains, N.Y. (Michael R. Pearl, of counsel), for plaintiffs.

Allen I. Sak, Town Atty., Town of Brookhaven (Denise F. Molia, Asst. Town Atty., Medford, N.Y., of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiffs brought this action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring certain amended sections of the Code ("Code") of the Town of Brookhaven ("Town") unconstitutional and for a permanent injunction restraining the Town from enforcing them. Plaintiffs also seek attorney's fees pursuant to 42 U.S.C. § 1988. Plaintiffs claim that their rights have been violated under 42 U.S.C. § 1983, and invoke the court's jurisdiction under 28 U.S.C. § 1331 and 1343 and under the Declaratory Judgment Act.

### I.

Chapter 57A of the Code, adopted in 1979, among other things, regulates the use and display of "mobile signs" in the Town. Plaintiffs, three of whom are companies engaged in the business of renting and servicing mobile signs, contend that recent amendments to these regulations in effect ban mobile signs in violation of their rights under the first and fourteenth amendments of the Constitution of the United States, constitute an illegal impairment of their contracts, and deprive plaintiffs of property without just compensation.

On application of plaintiffs the court on April 20, 1987 issued a temporary restraining order, enjoining the Town from enforcing the amended provisions pending resolution of plaintiff's motion for a preliminary injunction. The court also gave notice of its intent, pursuant to Federal Rule of Civil Procedure 65(a)(2), to consolidate the preliminary injunction hearing with the trial on the merits. The parties, by letter dated April 23, 1987, agreed that the temporary

restraining order would remain in effect pending the court's decision following the trial. The court tried the case on May 14, 1987.

The same parties were before the court about a year ago in a related action, Civ. No. 85–2896, to litigate the constitutionality of a 1982 amendment to the Code which would have completely prohibited all mobile signs in the Town as of October 1, 1985. In a memorandum and order dated June 20, 1986, the court declared that ordinance, section 4G(1) of Chapter 57A of the Code as amended by Local Law 11 of 1982, unconstitutional and void.

Subsequently the Town, by Local Law 12 of 1986, amended Chapter 57A of the Code. Plaintiffs in this action challenge amended sections 4G(4), (5), (8) and (9), which provide as follows:

§ 57A–4. Signs permitted in business and industrial districts.

.     .     .     .     .

G.   Mobile and Temporary Signs.

.     .     .     .     .

(4) Signs shall not be located on the same premises advertising the same business for more than 6 months in any given year. For the purposes of this subsection, the term "premises" shall mean an entire shopping center or commercial center.

(5) Fee for such mobile or temporary sign permit shall be $25.00 for one month. The applicant may apply for a permit for any length of time, in whole months, up to and including 6 months, if said sign is to remain unmoved at one location for the entire application period.

.     .     .     .     .

(8) Electrified signs shall be connected directly to an approved outdoor receptacle within 6 feet of said sign, or shall be connected directly to the electrical system of the building or structure. All wiring shall be in accordance with the National Electrical Code. The use of extension cords suspended overhead or extending along driveways, walkways or the ground shall be prohibited.

(9) In an established shopping center, with defined parking stalls, mobile and temporary signs shall be allowed in a legal parking stall, but in no event shall such sign be located closer than 8 feet to the edge of the road. . . .

Local Law 12 also amended the definition of "mobile sign" in section 2 of Chapter 57A to read: "Any sign not designed or intended to be anchored to the ground and designed and intended to be capable of being transported over public roads and streets, whether or not it is so transported." The prior definition had been more narrowly limited to those signs "directly mounted upon a trailer-type chassis. . . ."

Previously, section 4G applied only to mobile signs. Local Law 12 amended it to cover both mobile signs and temporary signs (and added a definition of "temporary sign" to section 2). Because section 4 is designed as a listing of the types of signs that are permissible in the Town's business and industrial districts, the inclusion of temporary signs in subsection G has the effect of increasing the variety of signs available for use in those districts.

## II.

Plaintiffs' primary witness was Robert Pearl, the owner of plaintiff Mobile Sign, Inc. and an officer of plaintiff New York State Sign Association. He testified that his company owns approximately 140 mobile signs, which it rents primarily to businesses in need of temporary advertising, but also to religious, social and civic organizations wishing to communicate with the public. The signs incorporate changeable copy so that a customer can display any message it wants. Mobile Sign, Inc. services the signs it rents by repairing vandalism, changing burnt-out light bulbs, replacing missing letters, and, for some customers, changing the copy as requested.

Thirty percent of Mobile Sign, Inc.'s total income is derived from the business it conducts in the Town. For plaintiff J & M Sign Service, according to the testimony of plaintiff Mario Pappalardo, this percentage is 95. Although no evidence was intro-

duced about the business of plaintiff Porta-Ad Ltd., an affidavit submitted in support of the motion for the temporary restraining order represented that all of its income is derived from business conducted in the Town.

With respect to amended sections 4G(8) and (9), the Town's attorney proffered for the first time at trial constructions that plaintiffs' attorney agreed obviated their objections. The Town's attorney represented that the requirements of the first and third sentences of section 4G(8), dealing respectively with outdoor receptacles and extension cords, were intended to apply only to electrified signs that fail to comply with the National Electrical Code and, in particular, with its requirement that the internal wiring of outdoor portable signs be equipped with ground-fault circuit-interrupters. The Town's attorney also stated that section 4G(9) does not mandate placing mobile signs in temporary parking stalls, but allows such placement as long as the section's eight-foot setback requirement is observed.

The court adopts these constructions of sections 4G(8) and (9). This leaves for court resolution only those issues presented by amended sections 4G(4) and (5).

### III.

Plaintiffs challenge amended section 4G(4) because it restricts the total cumulative time a mobile sign may be located on the same premises advertising the same business to six months a year. Pearl testified that enforcement of this section will have a detrimental effect on Mobile Sign, Inc.'s business because some of its customers (in unspecified quantity) rent mobile signs for more than six months in a given year. Those customers resist using permanent signs with changeable copy instead because of higher initial costs and the need to maintain such signs themselves. Section 4G(4) as amended requires them to ascertain in advance how they will allot the permitted cumulative six-month use of a mobile sign.

Prior to its amendment in 1986, section 4G(4) restricted the display of mobile signs at a location to a maximum period of thirty days at a time and required a "sign-free" interval of at least fifteen days between each such display period. According to Pearl the Town did not enforce this provision, and it did not affect his company's business. While the Town's sole witness, Chief Fire Marshal Joseph F. Sauerwein, testified that there was some enforcement of the provision, the court finds that this was so only occasionally.

Although the evidence shows that mobile signs are used for both commercial and noncommercial speech purposes, the language of amended section 4G(4) makes clear that the section regulates only mobile signs with commercial speech content. The six-month restriction is directed solely at signs "located on the same premises advertising the same business." Plainly the section does not cover signs that do not "advertis[e]" a "business."

Even if the section were ambiguous on this point, the court would adopt the narrower construction and hold the section regulates only commercial speech. The ordinance thus does not accomplish a total ban on mobile signs such as the court invalidated in its June 20, 1986 memorandum and order. A total ban's effect on noncommercial speech was a significant factor in the court's determination that the Town had failed in its burden, under the standards enunciated in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), of showing that "a more narrowly tailored restriction, i.e., anything less than a total ban, would promote less well the achievement of a legitimate goal." Memorandum and order of June 20, 1986 at 4–5.

Were the six-month cumulative use allowance to apply to mobile signs with noncommercial or ideological content, the court would have to consider whether the restriction was sufficiently akin to a total ban as to be unconstitutional. For example, a person might wish to make an ideological statement at a particular premises where the six-month allotment of mobile sign display time had already been used. Under those circumstances the consequences for

noncommercial speech of the six-month limitation might be indistinguishable from those of a total ban.

■ The standard by which to measure the constitutionality of section 4G(4) as a restriction only on commercial speech is the test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 563–66, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341 (1980), and subsequent cases. *See also Posadas de Puerto Rico Associates v. Tourism Co.,* — U.S. ——, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986). Under that standard, commercial speech receives first amendment protection if it concerns lawful activity and is not misleading; a restriction on otherwise protected commercial speech is valid only if it seeks to implement a substantial governmental interest, directly advances that interest, and reaches no further than necessary to accomplish the given objective. *Metromedia, supra,* 453 U.S. at 507, 101 S.Ct. at 2892.

■ Here there is no suggestion of misleading speech or unlawful activity. The promotion of aesthetics and traffic safety, presumably the objectives underlying amended section 4G(4), are substantial governmental interests. *See Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 805, 104 S.Ct. 2118, 2129, 80 L.Ed. 2d 772 (1984); *Metromedia, supra,* 453 U.S. at 507–08, 101 S.Ct. at 2892–93. Section 1 of Chapter 57A of the Code lists three objectives of the sign ordinance, two of which are "[a]voiding an unsightly proliferation of unnecessary signs," and "[p]rotecting the public from improperly located or distracting signs...." Thus, the critical inquiries are whether the ordinance furthers the Town's interests and whether its restriction on speech is greater than is essential to further those interests.

Plaintiffs contend that the section does not advance the Town's purported aesthetic interests because customers can circumvent the restrictions by mounting a mobile sign on wooden posts. The result would be a "permanent" sign that is just as unappealing visually, but not subject to the six-month limitation. Moreover, because the section appears to permit a given mobile sign to remain for six months at one premises, and for an additional six months at a different premises, there is no net effect on the Town's visual appearance.

Plaintiffs also urge that because the section now permits the use of temporary signs in business and industrial districts for up to six months, whereas before it purported to prohibit them, the Town's professed concern for aesthetics cannot be taken seriously.

While these arguments have some plausibility, the court's role is to decide not whether the Town has chosen the best method for advancing its interest in an attractive environment, but whether the method chosen in fact advances that interest. It is true that merchants or businesspeople may undermine in part the Town's aesthetic goals by converting their mobile signs into permanent signs by mounting them on permanent posts. But the record does not show that all such advertisers are likely to choose this route, or that plaintiffs, who are in the business of renting signs, will agree to what amounts to outright purchases of their product.

The court will not predict that the Town is wrong in its legislative judgment that the ordinance, by pressuring merchants to acquire permanent signs for their long-term advertising needs, will improve the Town's appearance. Those merchants faced with the need to switch to a permanent sign might choose to invest in a sign more visually pleasing than their year-round mobile sign. The record shows that while to the lay person's eye not all permanent signs are more attractive than mobile signs, many are. Few seem to be less attractive.

Plaintiffs' argument that the ordinance does not affect the total net display time of mobile signs in the Town is unconvincing. There is no evidence that a mobile sign that had been used for twelve months a year by a customer, and that now can be used by that customer for only six months a year, will find a different customer for the remaining six months. This might be the case if the demand for mobile signs out-

stripped their supply, but there is no evidence that this is likely.

The fact that the ordinance fails to regulate all equally unattractive mediums of commercial speech and ignores other available steps to enhance the Town's appearance is not generally a sufficient basis for finding that the ordinance does not advance its aesthetic objective if the Town reasonably restricted the scope of the ordinance. *Taxpayers for Vincent, supra,* 466 U.S. at 810–12, 104 S.Ct. at 2131–33; *Metromedia, supra,* 453 U.S. at 508–12, 101 S.Ct. at 2892–95. The Court in *Taxpayers for Vincent,* for example, said that an aesthetically-motivated restriction on speech might be deliberately underinclusive so as to afford adequate alternative opportunities for communication. 466 U.S. at 811 & n. 28, 104 S.Ct. at 2132 n. 28.

Here the Town, by allowing the use of mobile signs for up to six months a year and by including temporary signs in section 4G as signs permitted in the Town's business and industrial districts, has not gone as far as it might have in pursuing its aesthetic goals. But section 1 of Chapter 57A of the Code lists a third objective to the Town's sign ordinance (in addition to those of promoting aesthetics and traffic safety): "Providing for adequate signs for the business community to communicate its availability to the public." The Town's underinclusive regulatory approach in section 4G(4) in terms of an aesthetic objective may well reflect this concern for the opportunity of businesses to communicate their availability.

The court concludes that section 4G strikes a balance not manifestly unreasonable between the Town's competing objectives of promoting aesthetics and communication.

The court rejects plaintiffs' suggestion that the Town's proffered reasons for the amended ordinance are simply public rationalizations for impermissible purposes, to wit, the indirect accomplishment of a total ban on mobile signs and punishment of the mobile sign companies. There is no evidence that the Town acted with impermissible motives. A colloquy between the Town Supervisor and a Town resident at the public hearing on Local Law 12's passage is not to the contrary. One of the supervisor's responses, although it indicates her frustration and disagreement with this court's decision of last year, can hardly be taken to represent the Town Board's motive in acting on the legislation.

The issue remains whether section 4G(4) restricts speech more broadly than necessary to promote the Town's aesthetic objective. The reasoning in *Taxpayers for Vincent* suggests that it does not. There, the Supreme Court held that a total ban on the posting of signs on public property was narrowly tailored to the City of Los Angeles' interest in eliminating visual blight because the medium of expression itself constituted the aesthetic harm. The Court noted that by "banning these signs, the City did no more than eliminate the exact source of the evil it sought to remedy." 466 U.S. at 808, 104 S.Ct. at 2130.

Here, it is evident that the proliferation of mobile signs in the Town's business and industrial districts contributes to their unseemly appearance. Minimizing the time in which such signs can be displayed, under the logic of *Taxpayers for Vincent,* would necessarily be viewed as responding in a narrowly-tailored fashion to the substantive problem of concern. *Id.* at 808–10, 104 S.Ct. at 2130–31. Although Justice Brennan's dissent in that case, at 818–31, 104 S.Ct. at 2135–43, raises disturbing questions about whether this approach to the narrowly-tailored inquiry sufficiently guards first amendment freedoms, this court is not free to reject the premise of the majority's opinion.

The court finds that amended section 4G(4) implements the Town's substantial interest in promoting its visual appearance and advances that interest without unnecessarily restricting commercial speech. As a result, the court need not address whether any safety objectives also justify the amended section. *See, e.g., Lindsay v. City of San Antonio,* 821 F.2d 1103, 1110–11 (5th Cir.1987).

## IV.

■ The remaining trial issue is whether amended section 4G(5), requiring a monthly $25.00 permit fee for each mobile or temporary sign, is unconstitutional. Plaintiffs claim that the fee is punitive in nature and designed to discourage the use of their signs. They specifically charge that the fee is disproportionate to the fairly nominal one-time fee for permanent signs of 50 cents per square foot of sign area (but not less than $10.00) provided for in section 13 of Chapter 57A of the Code.

The Town responds that the $25.00 monthly fee reflects the higher administrative costs associated with mobile and temporary signs, and in particular the need to conduct regular inspections to ensure compliance with safety and locational requirements. Because of their portability, the Town maintains that it must inspect the signs twice a month to ensure compliance with setback and other display regulations.

Trial testimony established that the previous permit fee for mobile signs, in effect and enforced since the initial passage of the Town's sign ordinance in 1979, was $16.00. The Town urges that after seven years inflation alone requires an adjustment of the fee to $25.00. But the Town also submitted a detailed breakdown of the administrative costs underlying the fee, showing a total cost of $24.12 per sign, per month. The breakdown is based on an inspection of each sign twice a month by one of four sign inspectors, who are part-time employees of the Town's fire department. Other costs include secretarial and office expenses, travel expenses for the sign inspectors, and the supervisory time of a senior fire marshal.

■ Licensing or permit fees imposed on the exercise of first amendment rights generally are constitutional if they are designed only to cover the administrative costs involved in the license or permit. *Gannett Satellite Information Network, Inc. v. Metropolitan Transportation Authority*, 745 F.2d 767, 774 (2d Cir.1984); *Eastern Connecticut Citizens Action Group v. Powers*, 723 F.2d 1050, 1056 (2d Cir.1983). Plaintiffs did not in any way challenge the Town's breakdown of costs, although they might have contended that it assumes more inspections than are necessary or than are actually performed or provides for excessive salaries and allotment of personnel.

Plaintiffs' witness Pearl testified that his company passes on the higher permit fee to the customer and thus has lost business. This is not a sufficient basis for invalidating the fee. *Cf. Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974) (filing fee unconstitutional where it prevented indigent political candidate from running for office). Nor is the fact that the Town sees fit to charge a lesser, one-time fee based on square footage, for permanent sign permits. This disparity by itself does not impeach the Town's breakdown of the costs underlying the mobile sign permit fee. The court finds amended section 4G(5) constitutionally valid.

## V.

Plaintiffs' request for attorney's fees hinges on whether, notwithstanding the court's failure to grant the full relief sought, plaintiffs are "prevailing" parties within the meaning of 42 U.S.C. § 1988. This standard is met if plaintiffs " 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)). A specific judicial determination is not required. " '[P]arties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.' " *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) (quoting § 1988 legislative history, S.Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912). *See also Gingras v. Lloyd*, 740 F.2d 210, 212 (2d Cir.1984) (issue is whether "plaintiff has achieved some vindication of his rights as a result of the lawsuit").

Here, it is plain that as a result of plaintiffs' suit, the Town offered constructions of amended sections 4G(8) and (9) that it would not have otherwise. Indeed, as late as the argument on the motion for the temporary restraining order, the Town was adhering to interpretations of those sections that the court might well have determined were inconsistent with plaintiffs' first amendment rights. Accordingly, the court finds that plaintiffs are "prevailing" parties with respect to those claims and entitled to a reasonable attorney's fee.

The more difficult question is what is a reasonable attorney's fee. Plaintiffs cannot be considered "prevailing" parties with respect to their claims against amended sections 4G(4) and (5). Where plaintiffs have not prevailed on all of their claims, the extent of their success is crucial to a determination of the proper amount of an award of attorney's fees. *See generally Hensley v. Eckerhart, supra.* The parties should brief this issue if they cannot first settle it among themselves.

### VI.

The court declares that sections 4G(4), (5), (8) and (9) of Chapter 57A of the Code of the Town of Brookhaven, as amended by Local Law 12 of 1986 and as construed herein, are constitutional. The temporary restraining order against defendant is vacated, and entry of a permanent injunction is denied. The court awards plaintiffs a reasonable attorney's fee and, unless they first reach a settlement, directs them to submit appropriate argument and proof as to the proper amount within 60 days hereof.

The foregoing constitutes the court's findings of fact and conclusions of law. So ordered.