[Cite as *Ohio Civ. Rights Comm. v. Lyons*, 2016-Ohio-7174.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

OHIO CIVIL RIGHTS COMMISSION,

      PLAINTIFF-APPELLEE,                CASE NO. 8-16-05

      v.

DORIS LYONS, ET AL.,

      DEFENDANTS-APPELLEES.         O P I N I O N

[LATASHA HANNAH - INTERVENING
PLAINTIFF - APPELLANT]

Appeal from Logan County Common Pleas Court
Trial Court No. CV 14 07 0220

Judgment Affirmed

Date of Decision: October 3, 2016

APPEARANCES:

    *Brian J. Williams* for Appellant, Latasha Hannah

    *Steven R. Fansler* for Appellees

**SHAW, P.J.**

{¶1} Plaintiff-appellant, Latasha Hannah ("Hannah"), brings this appeal from the January 19, 2016, judgment of the Logan County Common Pleas Court denying her request for attorney's fees following a settlement on a claim that defendants-landlords-appellees, Doris Lyons and Charles Lyons (collectively referred to as appellees), engaged in discriminatory housing practices.

*Relevant Facts and Procedural History*

{¶2} Appellees are the owners of three residential properties on the same street in Bellefontaine, Ohio. The appellees lived in one of the properties and rented out the other two residences.

{¶3} In November of 2012, Hannah was seeking a residence for herself and her daughter. She allegedly found the appellees' property at 441 East Spring Street on a list of prospective Section 8 rentals through the Logan County Metropolitan Housing Authority. Hannah contacted the appellees and spoke with Doris Lyons on the phone.

{¶4} According to Doris's deposition, the phone conversation was roughly five minutes and Doris informed Hannah that the property was currently rented for another month and then would need repairs, thus making the property not immediately available. Doris testified that she took Hannah's information,

including her employment information, and would get back to her when the property became available.

{¶5} According to Hannah's deposition, the conversation between her and Doris lasted approximately 15-20 minutes. Hannah testified that she discussed Section 8 with Doris, that she discussed the rent amount with Doris, and that Doris informed her that the property would be available for rent after the current tenants moved out and repairs were made to the house. Hannah testified that Doris then took Hannah's references.

{¶6} It is undisputed that Doris Lyons called Hannah's employer, Logan Acres, to verify Hannah's employment status. Doris spoke to a woman named Kim Miller, an administrative assistant at Logan acres. During the call, Doris asked if Hannah was "white or colored." (Kim Miller Depo. Tr. at 10). Kim asked Doris to repeat the question and asked why Doris wanted to know. Kim testified that Doris indicated she had some rental properties Hannah had inquired about. Kim testified that she told Doris that Doris's question was discriminatory and that Doris responded by saying she had not done anything yet but she could tell by Kim's tone that Hannah "must be colored." (*Id*. at 11).

{¶7} Doris admitted in her deposition that she made a mistake when she asked whether Hannah was "colored" when she called Logan Acres. Doris testified she was just curious because Hannah's name was unusual. Doris contended that she

had rented to African-Americans before. Doris testified that she never spoke with Hannah again because the property was not ready for several months and she had misplaced Hannah's number by the time it was available.

{¶8} Hannah testified that she actually received two phone calls from the appellees after she spoke with Doris the first time but she did not answer them. Hannah testified that she called the appellees back twice, the first time leaving a message. Hannah testified that on her second call, she spoke very briefly with David Lyons. Hannah testified that after she identified herself on the phone call, David told her that her services would not be needed and then he hung up the phone. Hannah testified that the conversation lasted five seconds or less.

{¶9} In his deposition, David denied ever speaking to Hannah on the phone. Doris also denied ever attempting to get in contact with Hannah again, because the rental property was not ready to be rented for approximately six months and by that time there was a couple from her church she knew that wanted to rent the property.

{¶10} Hannah's employer made her aware of the statements Doris had made when calling Logan Acres. The Ohio Civil Rights Commission was then notified and it investigated the matter.

{¶11} On July 7, 2014, the Ohio Civil Rights Commission filed a complaint against the appellees, alleging that the appellees violated R.C. 4112.02(H)(1) and (H)(8) for engaging in discriminatory housing practices. (Doc. No. 1).

{¶12} On August 14, 2014, the appellees filed a motion to dismiss arguing, *inter alia*, that the commission failed to file a claim in a timely manner. On September 2, 2014, the commission filed a response.

{¶13} On September 18, 2014, Hannah filed a motion to intervene as party plaintiff. That motion was granted on September 23, 2014.

{¶14} On October 2, 2014, the trial court filed an entry denying the appellees' motion to dismiss.

{¶15} On October 3, 2014, Hannah filed her intervening complaint, alleging that the appellees had violated Ohio's fair housing laws.

{¶16} On October 16, 2014, appellees filed their answer to the commission's complaint, denying any wrongdoing. On March 12, 2015, the appellees filed their answer to Hannah's intervening complaint, similarly denying any wrongdoing.

{¶17} All parties then filed motions for summary judgment.

{¶18} On March 18, 2015, the trial court filed an entry ordering the parties to attend mediation. The parties did attend mediation, and a settlement was reached on all issues other than whether Hannah would be awarded attorney's fees. Handwritten notes and agreements from the mediation were filed in the record, containing the following terms.

**[The] Lyons will pay Hannah [$]9,000.**

**[The] Lyons will re-imburse** [sic] **State of Ohio for actual costs.**

**Each will pay 1/3 of Mediation costs.**

**OCRC will give training** [to the Lyons]**.**

**Case will be dismissed with prejudice, no record pending ESQ fees** [sic]

**No admission and no finding of liability/guilt**

**As to the remaining issue unresolved at mediation relating** [to] **the attorney fees of intervening Plaintiff's attorney the parties agree**

1.) **Brian Williams** [Hannah's attorney] **shall submit an application for fees**

2.) **Steve Fansler** [appellees' attorney] **does not oppose submission of an application for fees**

3.) **Fansler acknowledges that the court has the right to award fees**

4.) **A fee award is not mandatory**

(Doc. No. 110, Ex. 3). The mediation document was signed by the parties and their attorneys.

**{¶19}** On May 21, 2015, the trial court filed an entry dismissing the commission's complaint with prejudice due to the mediation agreement. The commission took no further part in this case.

**{¶20}** On November 24, 2015, Hannah filed an application for attorney's fees in the amount of $32,838. In her application, Hannah cited R.C. 4112.051(D), which states,

**(D) If the court or the jury in a civil action under this section finds that a violation of division (H) of section 4112.02**[1] **of the Revised Code has occurred, the court shall award to the plaintiff or to the complainant or aggrieved person on whose behalf the office of the attorney general commenced or maintained the civil action, whichever is applicable, actual damages, reasonable attorney's fees, court costs incurred in the prosecution of the action, expert witness fees, and other litigation expenses, and may grant other relief that it considers appropriate, including a permanent or temporary injunction, a temporary restraining order, or other order and punitive damages.**

{¶21} Hannah argued that the matter resolved in mediation in her favor and that she should be awarded her attorney's fees since she prevailed. Hannah argued that the statute stated that fees "shall" be awarded, requiring her to be awarded fees. Hannah cited R.C. 4112.08, which states that R.C. Chapter 4112 "shall be construed liberally for the accomplishment of its purposes[.]" Hannah also claimed that R.C. Chapter 4112 encouraged private enforcement of the Fair Housing Act, allowing individuals injured by discriminatory practices to vindicate their own rights, as well as promote the public interest in eradicating housing discrimination.

{¶22} On November 24, 2015, appellees filed a "renewed" motion to dismiss based on the statute of limitations despite the fact that they had already settled the underlying claim and had agreed that Hannah could argue for attorney's fees to the trial court. On December 22, 2015, Hannah filed a response.

---

[1] This refers to the statutory section on Unlawful Discriminatory Practices. Section 4112.02(H) deals specifically with housing.

**{¶23}** On January 11, 2016, the trial court filed a decision on the matter of attorney's fees. In its decision the trial court ultimately denied Hannah's request for attorney's fees, after conducting the following analysis.

> **Intervening Plaintiff seeks an award for attorney fees pursuant to R.C. 4112.051 of the Ohio Revised Code and specifically paragraph D of that section[.]** * * *
>
> [Trial Court quotes R.C. 4112.051(D)]
>
> * * *
>
> **The lynchpin in this case * * * is the statute. Ohio follows the American Rule that each party bears its own litigation costs in attorney fees. Ohio Trial Practice, 2015 Ed. Section 34:2. To award attorney fees there must be a contract or law authorizing the same. In this instance the intervening Plaintiff relies on the above quoted statute. The threshold for awarding attorney fees is that the Court or jury must find a violation; that has not happened in this case. Plaintiff's application argues that the statute should be interpreted liberally to achieve the purpose of this legislation.** [FN omitted]. **In effect the Court would have to rewrite the law which this Court declines to do. The Defendants have made it perfectly clear that they did not agree in the settlement that they had an obligation to pay attorney fees but instead would contest the same. The notes of the settlement bear that out. There is no contract to pay attorney fees, the statute does not authorize it. Accordingly, intervening Plaintiff's application for attorney fees is denied.**

(Doc. No. 119).[2]

**{¶24}** On January 19, 2016, the trial court entered a final judgment denying Hannah's request for attorney's fees and dismissing the matter with prejudice. It is

---

[2] The trial court did not address the appellees' "renewed motion to dismiss."

from this judgment that Hannah appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ITS DENIAL OF THE APPLICATION FOR ATTORNEY FEES.**

{¶25} In her assignment of error, Hannah argues that the trial court erred in denying her application for attorney's fees. Specifically Hannah contends that R.C. 4112.051(D) should be liberally interpreted, that she was the prevailing party under the lawsuit, and that she expressly preserved her right to seek attorney's fees in the mediation.

{¶26} At the outset, we note that the plain language of R.C. 4112.051(D) explicitly states that, "[i]f the *court* or *the jury* in a civil action finds that a violation of * * * * section 4112.02 * * * has occurred, the court shall award * * * reasonable attorney fees * * * incurred in the prosecution of the action." (Emphasis added). The trial court interpreted R.C. 4112.051(D) to not apply in situations where there was a settlement because there was no predicate finding of a violation by a court or a jury. Facially the statute does not seem to contemplate an award of attorney's fees where a discrimination claim has *settled* and the parties have explicitly agreed in that settlement agreement that there is "[n]o admission and no finding of liability/guilt."

{¶27} Despite the plain language of R.C. 4112.051(D), Hannah argues that R.C. Chapter 4112 should be given a "liberal construction" based on R.C. 4112.08, which reads, in pertinent part, "This chapter shall be *construed liberally for the accomplishment of its purposes*, and any law inconsistent with any provision of this chapter shall not apply."  (Emphasis added).  Hannah contends that by liberally interpreting R.C. 4112.051(D) to allow attorney's fees in scenarios such as these we would be furthering public policy of reducing discrimination.

{¶28} However, even though R.C. Chapter 4112 is to be liberally interpreted, Hannah cites no Ohio cases wherein attorney's fees were awarded in a discrimination action following a *settlement* where there was an express agreement of no finding of guilt and where the parties agreed that fees were not mandatory. Instead, Hannah relies on a number of federal cases interpreting similar federal discrimination statutes wherein it has been determined that attorney's fees *may* be awarded to the "prevailing party" in a discrimination claim even if the claim was settled.  *See Maher v. Gagne*, 448 U.S. 122, 129-130 (1980) (determining that for purposes of awarding attorney's fees under 42 U.S.C. §1988 a party may be considered to be a "prevailing party" in an action by vindicating their rights through settlement).

{¶29} Specifically, Hannah cites the Fair Housing Act codified in 42 U.S.C. §3601 *et seq*., and Proceedings in Vindication of Civil Rights under 42 U.S.C.

§1988. These two federal statutes contain the following language related to attorney's fees.

> [42 U.S.C. §3612] **(p) Attorney's fees**
>
> **In any administrative proceeding brought under this section, or any court proceeding arising therefrom, or any civil action under this section, the administrative law judge or the court, as the case may be, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the extent provided by section 504 of Title 5 or by section 2412 of Title 28.**

> [42 U.S.C. § 1988] **(b) Attorney's fees**
>
> **In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.**

{¶30} Notably, there are some immediate facial differences between the federal statutes and the Ohio statute. First, the federal statutes have no qualifier limiting them to situations where a violation was found by a court or a jury. Second, both of the federal statutes allow attorney's fees to be awarded to the "prevailing party," a designation that the United States Supreme Court has determined to

-11-

include people who have vindicated their rights through settlement. No such designation exists in Ohio's statute. Further, the federal statutes do not *mandate* that attorney's fees be awarded to successful claimants; rather, they *permit* a trial court to order attorney's fees within the court's discretion. Ohio's statute is actually *stricter* than the federal statutes in the event a violation is found by a court or a jury, as it *requires* a trial court to order attorney's fees in those scenarios.

{¶31} The problem in this case arises because the Ohio statute appears to limit recovery of attorney's fees to situations where a violation has been found by a court or a jury. Hannah argues that strictly limiting the Ohio statute to those express situations actually *discourages* settlement and would force clients to proceed to trial purely to get an award for attorney's fees. However, R.C. 4112.051(D) has clear and unambiguous language that applies only when there is a finding by a court or a jury. We must presume that the legislature was aware of the language it chose when drafting the statute and specifically elected not to use the broader language of the federal statute.

{¶32} Furthermore, while Hannah argues that Ohio's statute discourages settlement because attorneys would have to go to trial to get attorney's fees, it arguably *encourages* settlement because defendants would be aware that if they lost at trial they would be mandated to pay the opposing attorney's fees, incentivizing them to settle at an earlier stage. Thus we cannot find that the trial court erred in

applying the clear and unambiguous language of the Ohio statute in this case. Accordingly, Hannah's assignment of error is overruled.[3]

**{¶33}** For the foregoing reasons Hannah's assignment of error is overruled and the judgment of the Logan County Common Pleas Court is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**

---

[3] We note that the appellees attempt to renew their argument on appeal that the case should be dismissed for being untimely filed. Our disposition renders that argument moot. Nonetheless, we note that their argument seems questionable, at best, in light of the fact that they *had already settled the matter* at the time they filed their "renewed motion to dismiss," and the fact that they agreed at mediation that Hannah could file for her attorney's fees.